We also rejected the narrow statutory interpretation suggested by *ejusdem gen-*

*eris* to embrace a broader statutory reading in *United States v. Baird,* 85 F.3d 450 (9th Cir.1996), where we were called upon to determine whether the Civil Rights Act of 1964's definition of "place of entertainment" encompassed a 7–11 store containing two video games. Despite the appellee's contention that, pursuant to *ejusdem generis,* "any other place of exhibition or entertainment" should be limited to places like those specifically listed in the statute—"motion picture house, theater, concert hall, sports arena, [and] stadium"—we embraced a more literal definition of the general clause so as to reach the "evil addressed by the statute ...." *Id.* at 452–53.

### III. Conclusion

Tobeler's reliance on the rule of *ejusdem generis* fails in light of the Dyer Act's plain language and purpose. We hold that the definition set forth in the Dyer Act is sufficiently broad to encompass vehicles that run on land, even if they have the additional purpose of construction.

**AFFIRMED.**

**Aurelian DOBROTA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 01–71266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2002.

Filed Dec. 6, 2002.

John R. Alcorn, Irvine, CA, for the petitioner-appellant.

Edward C. Durant, Assistant United States Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

On Petition for Review of an Order of the Board of Immigration Appeals. INS No. A70–664–059.

Before: WARDLAW and BERZON, Circuit Judges, and ISHII, District Judge.*

BERZON, Circuit Judge.

Aurelian Dobrota petitions for review of the Board of Immigration Appeals' denial of his motion to reopen deportation proceedings after he was ordered deported in absentia pursuant to 8 U.S.C. § 1252b(c) (1995). He asserts that because neither he nor his attorney received notice of his deportation hearing, his deportation violated the statute and due process. We have jurisdiction over this matter pursuant to 8 U.S.C. § 1005a (1996),[1] and grant Mr. Dobrota's petition for review.

## BACKGROUND

Aurelian Dobrota, a Romanian citizen, was admitted to the United States on or around January 5, 1993 as a "nonimmigrant visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed July 4, 1993." Mr. Dobrota did not depart by July 4, 1993, however, but instead remained in the United States and filed an application for asylum. At some point during his asylum proceedings Mr. Dobrota hired attorney John Alcorn to represent him. In November 1993, Mr. Alcorn filed Form G–28 "Entry of Attorney" with the INS Asylum Office, stating that he now represented Mr. Dobrota.

Mr. Dobrota's asylum application was denied by the INS on April 28, 1994. Notice of this denial was sent to Mr. Dobrota's address of record, 13331 Adland Street, Garden Grove, California ("the Adland Street address") and also to Mr. Alcorn's office. The notice of denial instructed Mr. Dobrota that "[y]ou are directed to report any changes of address to the office having jurisdiction over your place of residence." In January 1995, Mr. Dobrota and his family moved to Concord, California, apparently without notifying the INS of their address change. Mr. Alcorn continued to serve as Mr. Dobrota's representative, however, and was recorded in the INS system as such.

On July 28, 1995, the INS issued a five-page "Order to Show Cause and Notice of Hearing" ("OSC"), which apprised Mr. Dobrota that he was subject to deportation because he had remained in the United States beyond the time permitted him at entry. On its third page the OSC stated that a hearing date and location would be determined and notice of these details would be mailed to "the address provided by the respondent." The fourth page stated:

> You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the office of the Immigration Judge listed in this notice. Any notices will be mailed only to the last address provided by you. If you are represented, notice will be sent to your representative.

At the top of the last page, the OSC further advised that "[y]ou must report any changes of your address or telephone

---

* The Honorable Anthony W. Ishii, United States District Judge for the Eastern District of California, sitting by designation.

1. Since this case was commenced before April 1, 1997, we have jurisdiction to review the BIA's denial of a motion to reopen under former 8 U.S.C. § 1105a (1996) (now repealed). *See* IIRIRA § 309(c)(1); *Garcia v. INS,* 222 F.3d 1208, 1209 n. 2 (9th Cir.2000).

number in writing" to the Immigration Judge's office address listed on the OSC. The OSC was sent to Mr. Alcorn's office and served on the Adland Street address by certified mail, return receipt requested. At the Adland Street address an individual unknown to Mr. Dobrota signed for receipt of the OSC.

On October 7, 1995, the Office of the Immigration Judge ("OIJ") issued a "Notice of Hearing," stating the time, date, and location of Mr. Dobrota's deportation hearing. This notice was sent only to the Adland Street address, not to Mr. Alcorn's office, and was returned to the INS on October 17, with "attempted, unknown" stamped on the envelope. Because Mr. Dobrota no longer resided at Adland Street and his attorney did not receive the "Notice of Hearing," neither was aware of the need to show up and neither did show up to Mr. Dobrota's deportation hearing on November 12, 1995. Finding no reasonable cause for Mr. Dobrota's absence, an Immigration Judge ("IJ") conducted the hearing in absentia and ordered Mr. Dobrota deported. Mr. Alcorn's office received a letter from the INS on August 8, 1997 stating that Mr. Dobrota had been found deportable and detailing arrangements for Mr. Dobrota's compelled departure to Romania.

On August 22, 1997, Mr. Dobrota moved to reopen his deportation proceedings. Three days thereafter, Mr. Alcorn filed Form EOIR–27, "Notice of Entry of Appearance of Attorney or Representative Before the Office of the Immigration Judge," with the Executive Office for Immigration Review ("EOIR"). On September 17, 1997, the IJ denied the motion to reopen by checking off reasons on a pre-

printed summary decision form.[2] Mr. Dobrota appealed to the BIA.

In view of the IJ's "incomplete and insufficient" decision, the BIA remanded the case to the IJ for further explanation of her decision. On December 16, 1999, the IJ issued a two-page decision explaining that she had denied Mr. Dobrota relief from deportation because the notice of the hearing had been sent to Mr. Dobrota's address of record, the Adland Street address. Moreover, the IJ noted that "[t]he respondent has not explain[ed] how he could have received the OSC and not the notice of the hearing when they were sent to the same place. Since notice was sent to the most recent address provided by the respondent, notice is considered sufficient under the law." As to Mr. Dobrota's argument that Mr. Alcorn, as his attorney of record, had not received the notice of hearing, the IJ stated: "There is no evidence of counsel's appearance before the court when the notice was sent. Therefore, counsel was not entitled to receive a copy of the notice."

Mr. Dobrota appealed the IJ's new decision to the BIA. On June 25, 2001 the BIA dismissed his appeal, finding that the IJ had properly denied the motion to re-open. The BIA noted:

> Proof of actual service or receipt of notice by the respondent is not required to effect service.... The record indicates that the notice of the November 21, 1995 hearing was sent to the respondent on October 7, 1995, by certified mail to the address of record for the respondent at that time. We therefore conclude that the respondent received adequate notice of his hearing.

**2.** The IJ checked all of the pre-printed reasons on the summary decision form: failure to comply with 8 C.F.R. §§ 103.5 and 242.22; failure to establish prima facie eligibility for relief sought; and failure to persuade the IJ that the motion to reopen should be granted in the exercise of discretion.

The BIA held, moreover, that Mr. Dobrota's counsel was not entitled to notice of the hearing because he had not executed the appropriate form to appear before the OIJ until nearly two years after the hearing notice had been mailed. In the absence of this form, "service of the hearing notice on the respondent's counsel would have been inappropriate." Mr. Dobrota petitioned this court for review of the BIA's decision.

## DISCUSSION

### A. *Due Process and Notice of Deportation Proceedings*

■ Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and notice of that hearing. *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir.1997). To comport with due process requirements, the notice afforded aliens about deportation proceedings must be reasonably calculated to reach them. *Id.* (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

The applicable [3] statutory requirements for notice of deportation hearings are codified at Section 242B of the Immigration and Nationality Act of 1952, Pub.L. 101–649, 104 Stat. 5061 (1952) (codified as amended at 8 U.S.C. § 1252b (1995)) (repealed 1996). Subsection 242B(a) specifies what OSCs shall contain and provides that "written notice (in this section referred to as an 'order to show cause') shall be given in person to the alien (or, if personal service is not practicable, such notice shall be given by certified mail to the alien or the alien's counsel of record, if any)." 8 U.S.C. § 1252b(a)(1) (1995). Section

242B(a)(1)(F) further states that, among other things, the OSC must inform the alien of "[t]he requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1252" and "[t]he requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number."

The statutory requirements for notices of hearing track the OSC requirements almost exactly: "[W]ritten notice shall be given in person to the alien (or, if personal service is not practicable, such notice shall be given by certified mail to the alien or the alien's counsel of record, if any), in the order to show cause or otherwise...." *Id.* at (a)(2). However, the paragraph discussing requirements for notices of hearing adds that "[i]n the case of an alien not in detention, a written notice shall not be required under this paragraph if the alien has failed to provide the address required under subsection (a)(1)(F) of this section."

Section 242B also mandates consequences for an alien who fails to appear at his or her deportation hearing:

(1) In general

Any alien, who, after written notice required under subsection (a)(2) of this section has been provided to the alien or the alien's counsel of record, does not attend a proceeding under section 1252 of this title, shall be ordered deported under section 1252(b)(1) of this title in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so

---

**3.** Deportation proceedings against Mr. Dobrota were initiated in 1995. Section 242B has since been repealed by the IIRIRA. Because this case was commenced before April 1, 1997, we review this case under the statutes

that governed at the time the case was brought. *See* IIRIRA § 309, Pub.L. 104–208, 110 Stat. 3009–546, 3009–625 (1996); *Romani v. INS*, 146 F.3d 737, 739 n. 3 (9th Cir. 1998).

provided and that the alien is deportable. The written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided under subsection (a)(1)(F) of this section.
(2) No notice if failure to provide address information

No written notice shall be required under paragraph (1) if the alien has failed to provide the address required under subsection (a)(1)(F) of this section.

8 U.S.C. § 1252b(c)(1)-(2).

■ These subsections of § 242B and our case law make clear that "[a]n alien does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied." *Farhoud*, 122 F.3d at 796. Rather, the INS may generally satisfy notice requirements by mailing notice of the hearing to an alien at the address last provided to the INS, *Urbina–Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir.1997); *Arrieta v. INS*, 117 F.3d 429, 431–32 (9th Cir.1997); 8 C.F.R. § 3.26(c) (1995), *or*, if she is represented, to her attorney's address of record. *See Garcia v. INS*, 222 F.3d 1208, 1209 (9th Cir.2000) (notice was adequate where served only upon petitioners' attorney).

However, section 242B(c) also provides that if proper notice under the statute—at minimum, mailing notice to the most recent address provided to the INS by the alien—is not given, the alien may have her in absentia deportation order rescinded and deportation proceedings reopened "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice accordance with subsection (a)(2) of this section." 8 U.S.C. § 1252b(c)(3). Mr. Dobrota argues that because neither he nor his attorney received notice of his deportation hearing, he did not receive the notice guaranteed him under subsection (a)(2) of the statute or the Fifth Amendment.

**B. *Reliance on the OSC's Statements***

■ We review the denial of a motion to reopen under an abuse of discretion standard. *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir.2000). We therefore will only overturn the BIA's ruling if it acted "arbitrarily, irrationally, or contrary to law." *Id.* (quotations omitted). We find that the INS acted arbitrarily and in violation of the due process notice requirements by refusing to reopen deportation proceedings in Mr. Dobrota's case, because its notice efforts were not reasonably calculated to reach Mr. Dobrota.

The OSC, which Mr. Dobrota did receive because it was mailed to his attorney, advises him in two places of the importance of notifying the INS of any change of address. However, the most significant and prominently placed of these warnings contains an apparently mixed message: "Any notices will be mailed only to the last address provided by you. If you are represented, notice will be sent to your representative." These two sentences, read in sequence, suggest to a reasonable reader two possibilities: either notice will be sent *not only* to the last address left by the respondent but also to his or her representative; *or*, notice will be sent to his or her representative in lieu of sending notice to the alien's personal address. A person in Mr. Dobrota's situation could understand the OSC in one of these two ways, particularly because the OSC actually had been sent to Mr. Dobrota's representative and that was how Mr. Dobrota learned of its issuance. It was therefore reasonable for Mr. Dobrota to understand that subsequent notices would also be sent to Mr. Alcorn.

The reasonableness of this impression is further reinforced by the statement on the third page of the OSC that "notice [of the hearing] will be mailed to the address pro-

vided by the respondent." It could be reasonably assumed that, since Mr. Alcorn's address had been an address "provided by" Mr. Dobrota, had been used by the INS for the purposes of sending out the OSC, and had been the only address at which Mr. Dobrota actually received the OSC, the INS was treating Mr. Alcorn's address as "the address provided by the respondent" to which future communications regarding the hearing would be sent.

Language in the statute and in the INS' own regulations support this understanding. Section 242B(a)(2), which specifies the requirements for notices of hearing, states that such notice "shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien *or to the alien's counsel of record,* if any), *in the order to show cause or otherwise*" (emphasis added). The "alien's counsel of record" for purposes of the OSC was Mr. Alcorn, the attorney who was representing Mr. Dobrota in his asylum proceedings before the INS. As the notice of hearing could be contained in the OSC (though it need not be), a fair inference is that the attorney to whom the notice of hearing would be sent is the same attorney, based on the same appearance formalities, to whom the OSC was sent.

The INS contends that our reading of the OSC and attendant laws would conflict with INS regulations, which provide that an attorney representing an alien in proceedings before the OIJ must file a distinct appearance, even if that attorney has already appeared as the alien's representative before the INS. *See* 8 C.F.R. § 3.17(a) (1995). Since the OIJ (and not the INS) is

the entity responsible for sending out notices of hearing, *see* 8 C.F.R. § 3.18 (1995), the OIJ would, on the INS' theory, not be obligated to mail notice to the alien's attorney unless that attorney had filed a separate appearance before it.

Neither 8 C.F.R. § 3.17 nor Form EOIR–27, however, provide any guidance as to the proper *timing* for filing an appearance before the OIJ. Section 242B(a) would suggest that the time for filing Form EOIR–27 is not *before* the notice of hearing, as the notice of hearing may be included in the OSC and no separate appearance could be entered before the OSC. As it is at least odd for the term "counsel of record" to refer to one concept if the notice of hearing is contained in the OSC and a different one if it is not, some warning as to the required timing (such as that contained on some EOIR forms, *see* note 4, *infra* ) was necessary to provide fair notice of the INS' understanding of the timing requirement.

Moreover, the INS' arguments fail to account for the reasonable reliance of both Mr. Dobrota and Mr. Alcorn on the INS' representations in the OSC. The OSC was sent to Mr. Alcorn's office, indicating that the INS recognized his address as one at which Mr. Dobrota could be contacted. The OSC contained no warning that if Mr. Alcorn failed to file a separate appearance with the OIJ, his would no longer be "he address provided by the respondent," to whom notice of the hearing would be sent. The upshot is that Mr. Alcorn was not on clear notice that he needed to file a new appearance in order to receive notice on Mr. Dobrota's behalf of the Notice of Hearing.[4]

---

4. It appears that the first time Mr. Dobrota received notice that his attorney had to file Form EOIR–27 *before* any proceedings was in executing Form EOIR–26, "Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge." Form EOIR–26

prominently warns: "An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a complete form EOIR–27." This warning, given at the stage

■ The INS argues that Mr. Dobrota acted "at his peril" by disregarding the OSC's warnings that he should not change residences without notifying the INS of his new address. In actuality, the OSC, like the statute, says that the notice must be of an address and telephone number (if any) "where you can be contacted." *See* 8 U.S.C. § 1252b(a)(1)(F) (1995) (the alien must provide "a written record of an address and telephone number *at which the alien may be contacted*") (emphasis added). Since the OSC specifically says that an attorney of record will be notified, a reasonable reading of the OSC is that an alien satisfies the (a)(1)(F) requirement that he provide a contact address by providing the address of an attorney through whom he may be contacted. That reading conforms with our law making clear that a valid address provided for notice purposes need not be that of the alien's own residence. *See Arrieta,* 117 F.3d at 432 (alien's "mailing address" for INS notice purposes may validly remain unchanged even if she moves); *Garcia,* 222 F.3d at 1209 (notice sufficient where served only upon petitioners' attorney). The ultimate irony in this somewhat Orwellian case is, of course, that the INS did contact Mr. Dobrota through his lawyer when it came time actually to deport him, by sending Mr. Dobrota's "bag and baggage" letter to Mr. Alcorn's office.

Although the INS undeniably has a significant interest in enforcing rules surrounding its proceedings, mechanical adherence to these rules cannot take precedence over Mr. Dobrota's reasonable reliance on the INS's statements in the OSC. *See Shamsi v. INS,* 998 F.2d 761, 763 (9th Cir.1993) (alien could not be penalized when she reasonably complied with misleading INS regulations and notice of

appeal form instructions, resulting in an untimely appeal). Respondents in immigration cases—like most laypersons—are frequently unfamiliar with the intricacies of the immigration bureaucracy. If an alien is informed that if he is represented, that "notice will be sent to [his] representative," and is not informed in that document (as he is later, in the notice of appeal form) that his attorney of record up until that point will not be considered his attorney of record before the OIJ, he is entitled to assume that the attorney who previously appeared for him will receive notice of all relevant hearings in his case. Accordingly, Mr. Dobrota's case must be reopened, so that he—and his counsel—may be properly given notice of a hearing before the IJ and may take advantage of the opportunity for a "full and fair hearing" guaranteed him by due process.

## CONCLUSION

We find that the BIA acted arbitrarily and contrary to due process standards when it denied Mr. Dobrota's motion to reopen. We therefore grant Mr. Dobrota's petition for review and remand the case to the BIA for proceedings consistent with this opinion.

REMANDED.

---

of appeal, does not apply to earlier stages of the proceedings. A similar warning in the OSC would have provided fair notice that Mr.

Alcorn would not be notified of the hearings absent submission of a new appearance before the OIJ, but there was no such warning.