Yasmeen **MANJIYANI**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 01–70415.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2002.

Filed April 11, 2003.

Timothy M. Greene, Law Offices of Greene & Lloyd, PLLC, Puyallup, WA, for the petitioner.

Mark C. Walters and Anh–Thu P. Mai, United States Department of Justice, Washington DC; Ronald E. LeFevre, Immigration and Naturalization Service, San Francisco, CA, for the respondent.

Donald A. Couvillon, Linda S. Wendtland, Office of Immigration Litigation, Washington, DC, for Respondent.

Before B. FLETCHER and GOULD, Circuit Judges, and MURGUIA, District Judge.[1]

Opinion by Judge MURGIA; Dissent by Judge BETTY B. FLETCHER.

## OPINION

MURGUIA, District Judge.

Petitioner, Yasmeen Manjiyani, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the denial of her motion to reopen deportation proceedings. The issue before the Court

---

**1.** The Honorable Mary H. Murguia, United States District Court Judge for the District of Arizona, sitting by designation.

is whether notice of the deportation hearing was sufficient where the notice was sent to the Petitioner's last address known to the Immigration Judge in Seattle, but was not sent to the last address known to INS in Los Angeles. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a).[2] For the reasons given below, we deny the petition.

## I. BACKGROUND

Manjiyani, a citizen of India, entered the United States on May 31, 1990 at New York, New York on a fraudulent B–2 visitors visa at the age of 24. In June, 1990, she married Faridali Manjiyani, a legal permanent resident, in New York City. Faridali Manjiyani filed a visa petition for his wife on May 4, 1992. This petition was approved on June 17, 1992, thereby recognizing Manjiyani as the spouse of a legalized permanent resident. Manjiyani currently is a homemaker with two small children.

The Manjiyanis moved to Yakima, Washington in September, 1992. On September 27, 1993, the INS office in Spokane, Washington served Manjiyani with an Order to Show Cause. Manjiyani acknowledged service of the Order by signing it and waived her right to an expedited hearing. The Order to Show Cause informed Manjiyani that there would be a deportation hearing and that she must notify the Immigration Judge in writing of any address changes.

In January, 1994, the Manjiyanis moved to Bellevue, Washington. Manjiyani filed a Form EOIR–33 Immigration Court Notice of Change of Address as directed in the Order to Show Cause. The EOIR–33 notified the Seattle Immigration Court of Manjiyani's new address.

In August, 1994, Manjiyani moved to Upland, California, and on January 9, 1996, Manjiyani began proceedings with INS in Los Angeles. Manjiyani's attorney forwarded to INS in Los Angeles Manjiyani's application to adjust status, application for employment authorization, application for waiver on ground of excludability, three checks for filing fees and a Form G–28 INS Notice of Appearance. All of these forms, except for the checks, contained Manjiyani's Upland, California address. The G–28 Notice of Appearance also contained Manjiyani's attorney's address. None of these forms indicated that Manjiyani was in deportation proceedings in Seattle.

On March 12, 1996, two and a half years after Manjiyani was served with the Order to Show Cause and two months after she began proceedings to adjust her status, INS filed the Order to Show Cause with the Seattle Immigration Court. On March 13, 1996, the Immigration Court sent a certified notice regarding a March 28, 1996 deportation hearing to Manjiyani at her former Yakima address. This notice was returned. On March 14, 1996, the Immigration Court apparently noted Manjiyani's change of address form and sent another certified notice to her at the Bellevue address regarding the March 28, 1996 hearing. This notice was returned on April 9, 1996. On March 28, 1996, another certified notice was sent to Manjiyani's Bellevue address regarding a rescheduled hearing for June 17, 1996. It was re-

---

**2.** Because Manjiyani's deportation proceedings commenced prior to April 1, 1997, and a final order of deportation was issued after October 30, 1996, this case falls within the "transitional rules" of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996). The transitional rules provide that the Immigration and Nationality Act (INA) applies as codified prior to the passage of the IIRIRA. *See* IIRIRA §§ 306(c)(1), 309(a); *Singh v. INS*, 213 F.3d 1050, 1051 n. 1 (9th Cir.2000).

turned on April 8, 1996 with the notation "unknown."

On June 17, 1996, the Seattle Immigration Court held a hearing *in absentia* and Manjiyani was granted voluntary departure until July 17, 1996. The order of deportation was sent to Manjiyani at her former Bellevue address. Despite the deportation order, INS in Los Angeles continued to process Manjiyani's application for adjustment of status. Interviews were held on March 13, 1997 and September 16, 1997 at INS offices in Los Angeles.

Although it is unclear exactly when, sometime in early 2000, Manjiyani became aware of the deportation order. Manjiyani, through her attorney, forwarded a Motion to Reopen Deportation Proceedings to the Los Angeles Immigration Court. The Los Angeles Immigration Court returned the motion to reopen to Manjiyani's attorney indicating that jurisdiction over the motion was with the Seattle Immigration Court. The motion to reopen was then filed in the Seattle Immigration Court.

The Immigration Judge denied the motion to reopen on May 22, 2000. Manjiyani filed a Form EOIR–26 Notice of Appeal on June 19, 2000 to the BIA. On February 13, 2001, the BIA affirmed the Immigration Judge's decision.

## II. STANDARD OF REVIEW

We review the BIA's denial of motions to reopen for abuse of discretion. *See Garcia v. INS,* 222 F.3d 1208, 1209 (9th Cir.2000). The BIA's determination of purely legal questions is reviewed de novo. *See Singh v. INS,* 213 F.3d 1050, 1052 (9th Cir.2000). Whether an immigration proceeding violates an alien's due process rights is a purely legal issue and is reviewed de novo. *See Nazarova v. INS,* 171 F.3d 478, 482 (7th Cir.1999). Factual findings are reviewed for substantial evidence. *See Sharma v. INS,* 89 F.3d 545, 547 (9th Cir.1996).

## III. DISCUSSION

Manjiyani contends the Immigration Judge erred by denying her motion to reopen deportation proceedings because she did not receive the notice required by 8 U.S.C. § 1252b(a)(2).[3]

Due process requires that aliens in deportation proceedings receive a full and fair hearing and notice of that hearing. *See Farhoud v. INS,* 122 F.3d 794, 796 (9th Cir.1997). In order to satisfy the due process requirements, notice must be reasonably calculated to reach the interested parties. *Id.* This does not mean that an alien must actually receive notice in order to satisfy due process, but rather it requires that "service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien." *Id.* (citing *United States v. Estrada–Trochez,* 66 F.3d 733, 736 & 736 n. 1 (5th Cir.1995)). The Ninth Circuit has held that certified mail of a notice of deportation hearing satisfies the requirements of due process when it is sent to the petitioner's last known address as required by 8 U.S.C. § 1252b(a)(1)(F). *Id.*

---

**3.** At the time of Manjiyani's deportation hearing, Section 1252b(c)(3) provided a deportation order could be rescinded only:

(A) upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section), or

(B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) of this section or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien. 8 U.S.C. § 1252b(c)(3).

■ The alien has the responsibility of notifying INS of any address changes. An alien in deportation proceedings "must provide the *Attorney General* immediately with a *written record* of any *change* of the alien's address or telephone number." 8 U.S.C. § 1252b(a)(1)(F)(ii) (emphasis added). The issue in this case is whether Manjiyani's filing of forms relating to her adjustment of status proceedings with INS in Los Angeles provided sufficient notice of her address change to the Attorney General. We hold that it did not.

The statute requires that the alien provide the "Attorney General" with "a written record" of a "change" to the alien's address. 8 U.S.C. § 1252b(a)(1)(F)(ii). Manjiyani did not comply with the requirements of § 1252b(a)(1)(F)(ii). She began proceedings with INS in Los Angeles to adjust her status. She filed numerous documents containing her current address in relation to the Los Angeles proceedings. Nowhere in the documents she filed with INS in Los Angeles did she indicate she was in deportation proceedings in Seattle, yet she now argues that the filing of those documents somehow triggered INS's obligation to advise the Seattle Immigration Court of her new California address.

■ [4] We recognize that INS does have an obligation to maintain a centralized database of current addresses for aliens in deportation proceedings. Congress has explicitly put the responsibility of maintaining a central address system for aliens in *deportation proceedings* on INS. 8 U.S.C. § 1252b(a)(4). § 1252b(a)(4) provides:

Central Address Files

The Attorney General shall create a system to record and preserve on a timely basis notices of addresses and telephone numbers (and changes) provided under paragraph (1)(F).

INS' duty to maintain a central address file is only implicated when an alien provides notice of her address or address change as required by § 1252b(a)(1)(F). In this case INS never had a duty to update Manjiyani's address in the central address file because Manjiyani's mere filing of documents in Los Angeles, that contained her current address, was not sufficient written notice of a change of address for purposes of § 1252b(a)(1)(F)(ii).

The Eighth Circuit discussed the INS' obligation to maintain a central address file in *Kamara v. INS*, 149 F.3d 904, 906–07 (8th Cir.1998). Kamara was served with an Order to Show Cause in Inver Grove Heights, Minnesota. *Id.* at 905. She later moved to Maryland to live with her uncle. *Id.* Kamara's uncle, Tom Bendu, contacted INS in Arlington, Virginia to post a bond. *Id.* Bendu completed an "Obligor Information Sheet" which contained his address and telephone number. *Id.* at 907. He also told the INS clerk that Kamara would be living with him, and on the form the INS clerk wrote "$1,000.00—address same." *Id.* Kamara never received notice of her deportation hearing and was ordered deported *in absentia* on March 10, 1993. *Id.* at 905.

The Eighth Circuit held that INS received written notice of Kamara's change of address and it was their responsibility to enter the new address into the central address file. *Id.* at 907. INS' failure to update Kamara's address resulted in the deportation hearing notice not being sent to Kamara's most recent address, and, therefore, INS failed to provide notice in accordance with 8 U.S.C. § 1252b(a)(2). *Id.* The Eighth Circuit also noted that "[w]hile the completed Obligor Information Sheet was not an ideal form of written notice of a change of address, we find it provided sufficient written notice of a change in address for the purposes of 8 U.S.C. § 1252b(a)(1)(F)(ii)." *Id.*

While we agree with the Eighth Circuit's analysis in *Kamara,* the present case is readily distinguishable. In *Kamara,* the INS clerk in Virginia who accepted the Obligor Information Sheet clearly knew Kamara was in deportation proceedings in Minnesota, and, by writing "$1,000.00—address same" the clerk accepted the Obligor Information Sheet in lieu of the correct change of address form. In this case, based on the record before us, Manjiyani failed to make any attempt to notify INS of her address change beyond the mere submission of forms in a separate INS action in a different city and state which happened to contain a different address. These forms were unrelated to the deportation proceedings and failed to indicate that the California address constituted an address change.

Manjiyani's filing of INS forms, unrelated to her deportation proceedings, was not sufficient notice of a change of address under 8 U.S.C. § 1252b(a)(1)(F)(ii).[4] This court declines to adopt the dissent's expansive view of INS' obligation absent congressional authority. INS' obligation to update Manjiyani's address in the central address file never arose because of Manjiyani's noncompliance with § 1252b(a)(1)(F). Notice of the deportation hearing was sent to the last change of address Manjiyani properly provided to INS, and, therefore, the notice comported with due process. INS provided Manjiyani notice of her deportation hearing in accordance with 8 U.S.C. § 1252b(a)(2). Manjiyani's motion to reopen deportation proceedings was properly denied.

## IV. CONCLUSION

For the foregoing reasons, the petition for review is denied.

**PETITION FOR REVIEW DENIED.**

BETTY B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. The majority adopts a rule that permits the INS to deport an alien in absentia when the agency, in full knowledge of the alien's current address, has failed to mail notice to the alien of the deportation proceedings. Due process does not permit such a result.

Our precedents require that the agency must send notice of deportation proceedings to the alien's last known address. *See Dobrota v. INS,* 311 F.3d 1206, 1210 (9th Cir.2002); *Farhoud v. INS,* 122 F.3d 794, 796 (9th Cir.1997). The law does not require that the alien actually receive notice of the proceedings, but it places a reasonable burden on the INS to make an effort consistent with the agency's awareness of the alien's address and contact information. *Dobrota,* 311 F.3d at 1210.

The undisputed record in this case demonstrates that the INS was aware of petitioner Manjiyani's actual and then-current California address at least three months before *any* attempt was made to notify her of deportation proceedings in Seattle. In January 1996, two and a half years after the INS served her with an order to show cause, Manjiyani, after moving to California, provided the INS in Los Angeles with her California address and alien identifica-

---

4. Respondent asks us to deny Manjiyani's petition for her failure to comply with 8 C.F.R. § 3.15. The regulation requires the alien to "provide written notice of the change of address on Form EOIR–33 to the Immigration Court where the charging document has been filed" within five days of the new address. 8 C.F.R. § 3.15(d)(2). Respondent's argument raises the issue of whether Regulation § 3.15 conflicts with Congressional intent in enacting § 1252b(a)(4), Central Address Files. We need not address this issue because Manjiyani not only failed to comply with Regulation § 3.15, but she failed to comply with the broader statute requiring her to provide the "Attorney General" with "a written record" of a "change" to the alien's address. 8 U.S.C. § 1252b(a)(1)(F)(ii).

tion number in connection with proceedings to adjust her status. However, the immigration court in Seattle first mailed notice of Manjiyani's deportation proceeding to her former address in *Yakima,* Washington. It is undisputed that the INS and the immigration court had received fully proper notice in 1994 that Manjiyani had moved from Yakima, Washington, to Bellevue, Washington. Apparently only after the notice that was sent to Yakima was returned did the INS check its records to find that Manjiyani had moved to Bellevue. Notice was then sent to the Bellevue address, which also was returned. As the majority correctly notes, no further action was taken to notify Manjiyani.

The INS does not contend that it was not actually provided with notice of Manjiyani's California address. It has merely argued that the INS office in Los Angeles did not communicate the information to the INS office in Seattle and that the agency was not required to do so because the agency treats deportation proceedings separately from other agency activities, including processing petitions to adjust status. It concludes, therefore, that the last known address for Manjiyani was the Bellevue, Washington, address. I find this argument unpersuasive.

In 1990 Congress required the INS to create and maintain a central address file with the names and addresses of all immigrants in deportation proceedings. *See* Act of November 29, 1990, Pub.L. No. 101–649, 104 Stat. 4978. Congress's mandate stated that "[t]he Attorney General shall create a system to record and preserve on a timely basis notices of addresses and telephone numbers (and changes) provided under paragraph (1)(F)." 8 U.S.C. § 1252b(a)(4). In turn, paragraph (1)(F) requires that the alien initially provide the Attorney General with a written record of her address, *id.* § 1252b(a)(1)(F)(i), that

the alien "provide the Attorney General immediately with a written record of any change of the alien's address," *id.* § 1252b(a)(1)(F)(ii), and that the possible consequence of failure to comply may be deportation in absentia. *Id.* § 1252b(a)(1)(F)(iii). The statute does not require an alien who, like Manjiyani, complies with paragraph (F)(ii) to indicate affirmatively that she is in deportation proceedings. I find it wholly implausible that Congress's mandate to create and maintain the central address files was as limited as the majority appears to believe.

Clearly, if the INS had complied with the Congressional mandate embodied in § 1252b(a)(4), upon receipt of Manjiyani's forms in California it would have entered her name, alien registration number, and address into the central address files and known immediately that there were deportation proceedings pending against her in Seattle. Moreover, the INS office in Seattle would have been able to check the central address file and would have known immediately of Manjiyani's California address.

However, under the majority's interpretation of § 1252b, the INS has no affirmative obligation to check whether an alien who presents herself for some other reason, such as change of status or renewal of a visa, is in deportation proceedings and no accompanying obligation to update its central files. This is not a reasonable interpretation of Congress's statutory command.

The Eighth Circuit has already rejected this narrow interpretation of § 1252b's scope. *See Kamara v. INS,* 149 F.3d 904, 906–07 (8th Cir.1998). The *Kamara* panel held that the written obligor form that Kamara's uncle filed with the INS provided adequate notice to the INS of her changed address, even though it did not indicate that her address had actually

changed (but was merely the "same" as her uncle's). The Eighth Circuit reasoned:

Once the Virginia INS office had received written notice of the change of address, it was their responsibility to enter the new address into the central filing system specifically created in connection with the enactment of § 1252b. It is possible that Kamara did not receive notice of her deportation hearing because the Virginia INS office failed to enter her new address into the filing system.

*Id.* at 907. The court then held that "the INS failed to send the deportation hearing notice to the most recent address provided by Kamara, and therefore did not provide notice in accordance with 8 U.S.C. § 1252b(a)(2)." *Id.* I find this reasoning persuasive. The majority infers that the INS in *Kamara* was aware that Kamara was in deportation proceedings because her uncle posted a bond. The *Kamara* opinion provides no support for that proposition. There is no indication that the obligor form indicated that Kamara was in deportation proceedings; nor does merely posting a bond on behalf of an alien clearly show that the alien is in deportation proceedings. *See* 8 C.F.R. 103.6 (discussing circumstances in which bonds for aliens may be posted).[1]

Because Manjiyani provided the Attorney General via the INS office in Los Angeles with adequate written notice of her change of address and the INS failed to comply with the requirements of § 1252b to send notice to Manjiyani's last known address, I conclude that the INS did not comply with the requirements of due process, *see Farhoud,* 122 F.3d at 796, and that the BIA's decision not to grant her petition to reopen deportation proceedings must be reversed.

However, even if the documents that were filed with the Los Angeles INS office did not trigger any obligations under § 1252b's central address file provision, there is uncontradicted evidence that, at some point in the status-adjustment proceedings, the Los Angeles office learned that Manjiyani was in deportation proceedings and stopped its own proceedings. At oral argument, counsel for the INS conceded that, based on the record presented, he could not determine why and when this had happened. The easiest (but not only) explanation is that, contrary to the INS's assertions, the Los Angeles and Seattle offices *did* communicate and became aware of Manjiyani's identity, status, and her California address. I submit that it would be proper to remand to the BIA for further proceedings to determine when the Los Angeles office became aware of Manjiyani's deportation proceedings in Seattle and the circumstances of their discovery. Of course, if the offices communicated about Manjiyani before her deportation proceedings in Seattle were completed, then her deportation in absentia plainly

---

1. The majority does not reach the question of whether the INS's regulation, 8 C.F.R. § 3.15(d)(2), is a basis independently for denying Manjiyani's petition. The regulation itself, insofar as it permits the INS to avoid complying with Congress's intent in enacting § 1252b and with basic notions of due process, presents quite serious problems. Reading the regulation to delineate the only circumstances in which the INS must send notice to a new address raises the difficulty of substantially undermining Congress's clear mandate that the INS centrally keep track of the addresses of aliens in deportation and of constitutional due process. I read § 3.15(d)(2) as a safe-harbor provision that permits an alien to know when reporting a change of address to the INS that it will indubitably trigger the INS's obligations to provide notice to a specific address. Accordingly, I conclude that it does not require us independently to deny Manjiyani's petition.

did not comport with the requirements of due process of law.

The equities of this case, to me, weigh strongly in favor of Manjiyani. There is no indication in the record that Manjiyani sought to "forum shop" between the INS offices in Seattle and Los Angeles. Nor is there any indication that she, herself, acted with the intent to deceive or mislead the immigration service. However, Manjiyani's attorney before the INS in her deportation proceedings and her proceedings in Los Angeles to adjust her status, Dan P. Danilov, was brought up before this court on disciplinary charges for failure to prosecute ten petitions for review of INS proceedings properly.[2] *See In re Danilov,* No. 98–80043 (9th Cir. Jul. 22, 1998) (report and recommendation of the appellate commissioner). The disciplinary proceedings were terminated without prejudice upon Danilov's resignation from the bar of this court. The record in this case is replete with evidence that Manjiyani's representation by Danilov below was flawed.

Accordingly, I respectfully dissent from the majority's determination that Manjiyani's petition to reopen her deportation proceedings must be denied.

---

**2.** Danilov has also been suspended from the practice of law in Washington State as of December 12, 2002; and at oral argument, Manjiyani's current attorney was able to inform the court that there were proceedings by the INS to discipline him for his practice before that agency.