**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HANI ABDULMALEK AL MUTARREB, *Petitioner,* <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, <br> *Respondent.* | No. 04-75676 <br><br> D.C. No. <br> Agency No. A077-821-065 <br><br> OPINION |

On Petition for Review of an Order
of the Board of Immigration Appeals

Argued and Submitted
December 11, 2008—San Francisco, California

Filed April 6, 2009

Before: A. Wallace Tashima, Marsha S. Berzon and
N. Randy Smith, Circuit Judges.

Opinion by Judge Berzon

**COUNSEL**

Robert B. Jobe and Katherine M. Lewis (argued), Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Gregory G. Katsas, David M. McConnell, and Patrick J. Bumatay (argued), U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

BERZON, Circuit Judge:

Hani Abdulmalek Al Mutarreb, a native and citizen of Yemen, was ordered removed in absentia and moved to reopen his proceedings. The immigration judge ("IJ") denied his motion to reopen, and the Board of Immigration Appeals ("BIA") affirmed the IJ's denial. Al Mutarreb petitions for review. He maintains that he did not receive notice of the pendency of proceedings in accordance with 8 U.S.C. § 1229(a)(1)(F), and argues that his motion to reopen should have been granted for that reason. Al Mutarreb also submits that the agency's finding of removability was either procedurally improper, or unsupported by substantial evidence. We reach only the latter contention. Because the record contains no evidence relevant to the charge of removability, we grant the petition for review and remand to the BIA with instructions to vacate the removal order.

## I.   FACTS AND PROCEDURAL HISTORY

Al Mutarreb was admitted to the United States on August 25, 1998, on an F-1 (student) visa. His visa allowed him to remain in the United States until August 20, 1999, for the purpose of studying at Contra Costa Community College in San Pablo, California.

In August or September of 1999, Al Mutarreb submitted an asylum application to the former Immigration and Naturalization Service,[1] stating that he feared persecution if he returned to Yemen. After an interview with an asylum officer in October 1999, Al Mutarreb received a Notice of Intent to Deny his application and submitted a rebuttal to the Notice, but received no response from the Service. A year and a half later, on April 3, 2001, the Service commenced removal proceedings against Al Mutarreb by issuing a Notice to Appear ("NTA"). The NTA charged that Al Mutarreb was removable under 8 U.S.C. § 1227(a)(1)(C)(i) ("Nonimmigrant status violators") because he had not attended Contra Costa Community College "from August 20, 1999 to Present," and so failed to comply with the terms of his F-1 status. The NTA directed Al Mutarreb to appear in Immigration Court for a removal hearing on May 9, 2001.

It is undisputed that Al Mutarreb did not receive the NTA. The Service sent the NTA via certified mail to a P.O. Box address that Al Mutarreb had provided in a previous filing, but the envelope was returned to the Service on May 4, 2001, bearing the stamp "unclaimed." The Service did not attempt to re-send the NTA to Al Mutarreb's street address (which Al Mutarreb had also provided in the same previous filing). Nor did the Service send a copy of the NTA to Al Mutarreb's counsel of record, Elias Shamieh, as Al Mutarreb argues the regulations require it to do. *See* 8 C.F.R. § 292.5(a) ("Whenever a person is required by any of the provisions of this chapter to . . . be given notice . . . such notice . . . shall be given . . . to . . . the attorney or representative of record, or the person himself if unrepresented.").

---

[1]The Immigration and Naturalization Service, or "INS," was dissolved in 2002 by the Homeland Security Act, Pub. L. No. 107-296 § 101(a) (2002). Under the Act, most of the INS's functions were transferred to various components of the newly constituted Department of Homeland Security ("DHS"). For simplicity's sake, we use the term "the Service" to refer to both the former INS and the current DHS.

Because neither Al Mutarreb nor his representative received the NTA, neither was aware of the pendency of removal proceedings or the date of the hearing. Not surprisingly, neither Al Mutarreb nor his attorney appeared in Immigration Court on May 9, 2001. The Service thereupon asked the IJ to proceed with the removal hearing in absentia, pursuant to 8 U.S.C. § 1229a(b)(5)(A). The IJ did so. There is no transcript of the proceedings. At the close of the proceedings, the IJ signed a computer-generated order directing that Al Mutarreb be removed to Yemen "on the charge contained in the Notice to Appear." Notably, the IJ failed to check either of the two boxes on the computer-generated order that would indicate whether her finding of removability was supported by "the respondent['s] admi[ssion of] the factual allegations" at a prior hearing, or "documentary evidence [submitted by the Service] . . . which established the truth of the factual allegations."

The Immigration Court sent a copy of the removal order to Al Mutarreb. The record does not indicate which address or method of mailing the Service used this time, but it is clear that the removal order, unlike the NTA, did reach Al Mutarreb. Shortly after receiving the removal order, Al Mutarreb filed a motion to reopen with the Immigration Court, which the IJ denied.[2]

Appealing the denial of his motion to reopen to the BIA, Al

_____

[2]Initially, in his first motion to reopen, Al Mutarreb argued that his notice of the pendency of proceedings was statutorily deficient because the Service sent his NTA to an incorrect address, as he surmised it must have done, rather than to his P.O. Box. Because, in fact, the NTA *had* been sent to Al Mutarreb's P.O. Box, the IJ denied the first motion to reopen. Al Mutarreb appealed that denial to the BIA, but then filed a second motion to reopen with the IJ, in which he conceded that the Service mailed his NTA to the correct address, but raised the notice arguments now before us. This second motion to reopen was transferred to the BIA and consolidated with his pending appeal of the IJ's denial of his first motion to reopen, and is now before us.

Mutarreb conceded that the Service had mailed his NTA to his current P.O. Box address, but argued that the Service's attempt at notice did not meet the requirements of the Immigration and Nationality Act ("INA") § 239(a)(1)(F), codified at 8 U.S.C. § 1229(a)(1)(F), and that the IJ was therefore without authority to conduct proceedings in absentia.[3] The BIA rejected Al Mutarreb's argument, holding that the Service's attempt at notice was statutorily sufficient and that reopening was therefore not merited.

Al Mutarreb filed a petition for review with this Court. Before argument, the parties stipulated to a remand "for the sole and limited purpose of considering the issue of Petitioner's [remov]ability." We granted the joint motion and remanded to the BIA. *Al Mutarreb v. Ashcroft*, No. 02-74177 (9th Cir. Feb. 25, 2004) (order).

On remand, the BIA took the view that the IJ's failure to check either box "appears to be a clerical oversight," and reasoned that, even though the IJ's factual findings are not indicated on the face of the order, one can infer from the order of removal that the IJ must have made the factual finding necessary to sustain the removability charge — namely, that Al Mutarreb failed to comply with the terms of his student visa. The BIA then concluded that the IJ's imputed factual finding is supported by a single piece of evidence in the record: Al Mutarreb's asylum application, which, in response to the instruction "Provide the following information about your

---

[3]U.S.C. § 1229a(b)(5)(A), which authorizes IJs to conduct in absentia proceedings in certain situations, states that an alien who fails to appear may be ordered removed in absentia only "if the Service establishes by clear, unequivocal, and convincing evidence that . . . written notice was . . . provided [by the Service] . . . at the most recent address provided [by the alien] under [INA] section [239](a)(1)(F) of this title." Section § 239(a)(1)(F), in turn, lists specific warnings and advisals that an NTA must contain, which pertain to the special address-updating obligations of aliens in removal proceedings, and the repercussions facing them if they do not comply. 8 U.S.C. § 1229(a)(1)(F). *See infra*, Section II(A).

education, beginning with the most recent: Name of School, Type of School, Location, [Dates] Attended," does not list any educational experience in the United States. The BIA held that this lack of information, without more, supports an inference that Al Mutarreb did not attend Contra Costa Community College as his visa required.

Al Mutarreb filed a timely petition for review with this Court.

## II. ANALYSIS

Al Mutarreb's removal order qualifies as a "final order of removal" over which this Court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because his removal order was entered in absentia, our review is also governed by an additional provision of the INA, 8 U.S.C. § 1229a(b)(5)(D). This provision specifies that circuit courts "shall" have jurisdiction to review the following three aspects of in absentia orders: "(i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." *Id.* The first and third aspects are at issue here. Al Mutarreb submits that he did not receive proper notice of his removal proceedings, and, in the alternative, that the IJ's removal order is unsupported by a valid administrative finding that he is removable as charged. If he prevails on either claim, we must grant his petition for review. We address Al Mutarreb's claims in turn.

### A. Notice

In the context of removal proceedings, notice is first accomplished through an NTA, which advises the alien that removal proceedings have begun, alerts him to the charges against him, and informs him of the date and location of the hearing.[4] It is undisputed that Al Mutarreb did not actually

---

[4]Separate from the NTA are so-called "hearing notices," which are used to alert aliens to changes in hearing time or location when necessary. *See* 8 U.S.C. §§ 1229(a)(1) (regarding NTAs), 1229(a)(2) (regarding hearing notices).

receive an NTA. Our question is whether Al Mutarreb can be fairly charged with having received notice, consistent with the requirements of the INA and due process.

**[1]** The INA permits service of NTAs and hearing notices either in person or by mail. 8 U.S.C. § 1229(c). Service by mail is statutorily sufficient so long as the notice was sent to "the last address provided by the alien in accordance with subsection (a)(1)(F) of this section." *Id.*; *see also* 8 U.S.C. § 1229a(b)(5)(A) (authorizing IJs to enter removal orders in absentia only "if the Service establishes by clear, unequivocal, and convincing evidence that . . . notice was . . . provided at the most recent address provided under section 1229(a)(1)(F) of this title."). What it means to be an address "provided under section 1229(a)(1)(F)," in turn, was the focus of *Matter of G-Y-R-*, 23 I. & N. Dec. 181 (BIA 2001) (en banc), which held that an alien can be said to have "provided" his address to the Service "under" § 1229(a)(1)(F) only if he has actually received, or can be fairly charged with receiving, the specific advisals and warnings enumerated at § 1229(a)(1)(F)[5] regarding the consequences of his failure to provide and update his address once removal proceedings have begun. That advisal is usually conveyed to an alien for the first time in an NTA. *G-Y-R-*, 23 I. & N. Dec. at 187. Because the parties agree that Al Mutarreb never actually received his NTA, *G-Y-R-*'s application in this case turns upon whether Al Mutarreb can be "properly charged" with having received notice. *Id.* at 189. The parties agree that whether an alien is properly charged with receiving an NTA he did not in fact get requires a due process inquiry — whether the method of service is " 'reasonably calculated, under all the circumstances, to appri[s]e inter-

[5]U.S.C. § 1229(a)(1) lists specific pieces of information that must be contained in the NTA, including, at subsection (F), "The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title."

ested parties of the pendency of the action.' " *Matter of M-D-*, 23 I. & N. Dec. 540, 542 (BIA 2002) (quoting *Mullane v. Centr. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *accord Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997).

Al Mutarreb argues that the method of service employed was not reasonably calculated to reach him. After the NTA was returned as "unclaimed," Al Mutarreb points out, the Service made no attempt to send the notice to Al Mutarreb's street address (which Al Mutarreb had provided to the Service as an alternative to his P.O. Box). Nor did it mail a copy of the NTA to his counsel of record, Elias Shamieh, as Al Mutarreb argues 8 C.F.R. § 292.5(a) requires. Instead, the Service affirmatively requested that proceedings go forward without Al Mutarreb. *Compare Jones v. Flowers*, 547 U.S. 220, 225 (2006) (holding that when the state sends a letter threatening a tax foreclosure via certified mail, and the letter is returned unclaimed, due process requires that the state take "additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.").

Al Mutarreb also maintains that the Service was required to serve the NTA on his counsel of record, pointing to 8 C.F.R. § 292.5(a) ("Whenever a person is required by any of the provisions of this chapter to . . . be given notice . . . such notice . . . shall be given . . . to . . . the attorney or representative of record, or the person himself if unrepresented."). Other provisions of the statute and regulations, however, use the disjunctive "or," which the government suggests means that the Service may always send an NTA to *either* the alien *or* his counsel, regardless of 8 C.F.R. § 292.5(a). *See* 8 U.S.C. § 1229(a)(1) ("if personal service is not practicable, [notice shall be effected] through service by mail to the alien *or* to the alien's counsel of record, if any") (emphasis added); *see also* 8 C.F.R. §§ 1003.13, 1003.26(c)(2). Whether 8 C.F.R. § 292.5(a) requires the Service to serve an NTA on an alien's

counsel — if he has one and has so notified the Service — is an unsettled question in this Circuit.[6]

[2] These are substantial questions, but we need not resolve either of them today. Assuming that notice was sufficient and that the IJ was therefore statutorily authorized to conduct proceedings in absentia, we hold, for the reasons explained below, that the resulting removal order is nevertheless invalid.

## B. Removability

[3] IJs are statutorily authorized to order aliens removed in absentia only "if the Service establishes by clear, unequivocal, and convincing evidence that . . . the alien is removable" as charged in the NTA. 8 U.S.C. § 1229a(b)(5)(A). Our task on a petition for review is to decide whether substantial evidence supports the IJ's finding that the Service met its high burden of proving removability. *See Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 679 (9th Cir. 2005).

---

[6]In past cases, we have held that service of a hearing notice on an alien's counsel, and not on the alien himself, may be a sufficient means of providing notice of the time and location of removal proceedings. *See, e.g.*, *Garcia v. INS*, 222 F.3d 1208 (9th Cir. 2000) (per curiam) (finding no due process violation when notice was personally served on petitioner's counsel at the conclusion of a master calendar hearing). We have never held the converse, however: that serving a hearing notice on an alien, but not on his counsel of record, is sufficient. *Cf. Dobrota v. INS*, 311 F.3d 1206 (9th Cir. 2002) (holding that the INS's mailing a hearing notice to an alien's last known address, but not to his attorney, violated the alien's due process rights, because the alien reasonably relied on statutory and regulatory language not relevant here that suggested his counsel would receive copies of all such notices). Nor have we resolved the regulation's meaning in the context of NTAs, rather than hearing notices. *But cf. Mendez v. INS*, 563 F.2d 956 (9th Cir. 1977) (holding that the failure to notify alien's counsel of an order to appear for deportation violated the alien's statutory right to counsel); *id.* at 958 n.1 ("[N]otice [to an alien's counsel] is required by 8 C.F.R. § 292.5(a), and failure to adhere to such published regulations may deny due process of law.") (internal quotation marks and citation omitted).

**[4]** Al Mutarreb argues that the IJ failed to make any factual findings to support the removal order, and that the BIA improperly engaged in factfinding of its own to uphold the IJ's order. Al Mutarreb is correct that the BIA is not authorized to find facts in the course of deciding appeals. *See* 8 C.F.R. § 1003.1(d)(3)(i), (iv); *Matter of Adamiak*, 23 I. & N. Dec. 878, 880 (BIA 2006).

**[5]** As the government points out, however, the computer-generated order signed by the IJ allows for only two possibilities: either "[a]t a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability," or "[t]he . . . Service submitted documentary evidence relating to the respondent which established the truth of the factual allegations contained in the Notice to Appear." Because there was no "prior hearing" in Al Mutarreb's case, the only possibility is that the IJ found sufficient evidence in the record to support the removal "on the charge[ ] contained in the Notice to Appear." *Id.* The NTA contained only one charge of removability: Al Mutarreb's alleged failure to attend Contra Costa Community College "from August 20, 1999 to Present." What the BIA appears to have done is to infer that the IJ found the only thing she could have found to support the removal order she issued — that the Service had presented documentary evidence establishing that Al Mutarreb failed to attend Contra Costa Community College during the dates provided in the NTA. We need not decide whether the BIA stepped outside its statutorily authorized role in drawing that inference, because even if it did not — that is, even if the IJ did make the finding that Al Mutarreb was removable as charged — the record contains not an iota of evidence, let alone substantial evidence, to support the IJ's removability finding.

The sole ground of removability charged in the NTA was Al Mutarreb's alleged failure to attend Contra Costa Community College from August 20, 1999, to April 3, 2001 (the date on which the NTA was issued). The BIA affirmed the IJ's

finding that "DHS [had] met its burden of establishing [Al Mutarreb's] removability." Yet, the evidence in the record could not possibly have established Al Mutarreb's removability as charged in the NTA. The *only* evidence in the record to which the Service pointed before the IJ to support this allegation — indeed, the only evidence to which it *could* have pointed — is Al Mutarreb's asylum application, which lists his educational history. In the application, Al Mutarreb provided information about his schooling in Yemen, but nothing regarding his schooling, if any, in the United States. The government argues that Al Mutarreb's failure to list any academic history in the United States supports an inference that he did not attend Contra Costa Community College during the dates charged in the NTA.

**[6]** This inference is simply unsupportable. Al Mutarreb completed and filed his asylum application in August or September of 1999. The charge in the NTA, by contrast, specifically deals with the period from August 20, 1999, to April 3, 2001 — *after* his asylum application was completed and filed.[7] No reasonable adjudicator could have found Al Mutarreb removable as charged when the only evidence proffered in support of the charge relates to an irrelevant time period.

**[7]** The government now makes what is essentially a harmless error argument, suggesting that even if the charge as written in the NTA cannot be sustained on appeal, we should nevertheless affirm the removal order on an alternative ground. The record shows that Al Mutarreb's student visa was set to expire on August 20, 1999, so his presence in the United States, the government urges, would have been unlaw-

---

[7]Because the asylum application covers a time period that does not overlap with the charged period, omissions in the application are simply not relevant to the charge. Therefore, we need not decide whether an omission — the mere fact that Al Mutarreb left out any reference to Contra Costa Community College in listing his educational history — constitutes "clear, unequivocal, and convincing evidence" that he did not attend classes there for the period covered by his visa.

ful after that date, and would have supported a finding of removability had the Service so charged. Aside from the serious due process concerns that would arise if we were to affirm a removal order on a ground introduced only on appeal and not raised or litigated below, *see Alvarez-Santos v. INS*, 332 F.3d 1245, 1252 (9th Cir. 2003), the government's argument fundamentally misunderstands the nature of our review. Whatever the grounds on which Al Mutarreb *might* have been found removable, only one was charged. We have no power to affirm the BIA on a ground never charged by the Service or found by the IJ. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (noting that a "court is powerless to affirm the administrative action by substituting what it considers to be a more adequate and proper basis" not relied on by the agency); *see also Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1107 (9th Cir. 2006) (holding that an alien's prior "possession conviction cannot sustain the removal order because it was not alleged in the NTA").[8]

[8] Nor do we accept the government's contention that Al Mutarreb's failure to appear and contest his removability prejudiced the Service in some way that warrants ignoring the fair

---

[8]Similarly, we have rejected the argument that a criminal conviction that *might* have served as a ground of removability, but that was not the basis for the IJ's removal order, precludes our review of that removal order under the INA's jurisdiction-stripping provision at 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain criminal offenses]"). In *Alvarez-Santos*, we held that because "a person is not 'removable' on a particular basis unless or until the IJ determines that he is," 8 U.S.C. § 1252(a)(2)(C) deprives us of jurisdiction to review a final order of removal only if that order is based on an administrative finding that the alien is removable for having committed the covered criminal offense. 332 F.3d at 1251. *See also Chowdhury v. INS*, 249 F.3d 970, 974-75 (9th Cir. 2001) (because alien's "conspiracy conviction was not specified [as a ground of removability] in the Notice to Appear, [it] cannot serve as an independent basis for affirming the BIA's decision" by triggering the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(C)).

notice concerns that require the Service to prove what it has charged, not something else. The government asserts that, had Al Mutarreb "attended the removal proceeding as he was obligated to do," it would quickly have become apparent that the charge contained in the NTA was incoherent and probably erroneous, and the Service could have corrected it. Yet, when Al Mutarreb did not appear at his scheduled hearing, the Service affirmatively asked the IJ to proceed in absentia. At that hearing, during which the Service argued its case before the IJ and presented evidence to meet its burden of proof, the Service was required to establish Al Mutarreb's removability "by clear, unequivocal, and convincing evidence." 8 U.S.C. § 1229a(c)(5)(A). At any time prior to the entry of the removal order, the Service could have sought a continuance to amend the NTA or issue additional charges. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."); *id.* § 1003.30 ("At any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by the Service in writing."). The Service did not do so, but instead requested that the IJ sustain the charge as written in the NTA. That the Service made that choice instead of correcting its own mistake cannot be ascribed to Al Mutarreb.[9]

---

[9]If the Service had discovered its error during the hearing and attempted to amend the NTA on the spot to state additional charges, both the INA and due process would likely have required that the proceedings be continued while the Service issued written notice of the new charges, as Al Mutarreb was not present at the hearing to be notified in person. *See* former 8 C.F.R. § 240.10(e), now designated at 8 C.F.R. § 1240.10(e) ("At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by the Service in writing. The alien in removal proceedings shall be served with a copy of these additional charges and allegations. The immigration judge shall read the additional factual allegations and charges to the alien and explain them to him or her. The immigration judge shall advise the alien, if he or she is not represented by counsel, that the alien may be so represented, and that he or she may be given a reasonable continuance to respond to the additional factual allegations and charges."); 8 U.S.C.

In sum, even assuming that Al Mutarreb was properly charged with having received notice of the pendency of his proceedings, and assuming further (as the BIA did) that the IJ did make a finding that Al Mutarreb is removable as charged, that removability finding is unsupported by substantial evidence. As a result, the IJ was without statutory authority to order Al Mutarreb removed in absentia under 8 U.S.C. § 1229a(b)(5)(A) — which requires that removability be established by "clear, unequivocal, and convincing evidence" — and the removal order must be vacated. *See Shivaraman v. Ashcroft*, 360 F.3d 1142 (9th Cir. 2004) (vacating removal order where alien was not removable as charged); *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1009 (9th Cir. 2003) ("[F]rom these facts, it cannot reasonably be concluded that the INS carried its burden by clear, unequivocal, and convincing evidence . . . . Accordingly, we grant the petition for review and vacate the order of removal."); *see also Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003) ("[T]he BIA's lack of authority to enter Noriega-Lopez's removal order renders that component of his proceedings 'in essence, a legal nullity.' ") (quoting *Reynaga v. Cammisa*, 971 F.2d 414, 417 (9th Cir. 1992)).

### III.  CONCLUSION

**[9]** Our decision to vacate the removal order does not prevent the Service from issuing a new Notice to Appear. But, because the first NTA was the subject of a final judgment on the merits, res judicata bars the Service from "initiating a second deportation case on the basis of a charge that [it] *could*

---

§ 1229(a)(1) ("if personal service is not practicable, [written notice shall be given] through service by mail . . .." ); *see also Lazaro v. Mukasey*, 527 F.3d 977, 980-81 (9th Cir. 2008). We have assumed without deciding that Al Mutarreb was properly charged with notice of the first NTA, but it does not follow, as the government suggests, that that constructive notice would carry over to bless any new charges the Service might have wished to bring later on.

*have brought* in the first case," but did not. *Bravo-Pedroza v. Gonzales*, 475 F.3d 1358, 1358 (9th Cir. 2007) (emphasis added); *see also Ramon-Sepulveda v. INS*, 824 F.2d 749, 750-51 (9th Cir. 1987) (per curiam) (holding that res judicata applies in deportation proceedings). Should the Service decide to initiate new proceedings against Al Mutarreb based on facts that have arisen or come to light after his original in absentia proceeding took place, it will again bear the burden of proving his removability under 8 U.S.C. § 1229a(c)(3), and if it prevails, Al Mutarreb will have the opportunity to renew his asylum application or make any other claims for relief to which he may be entitled. *Id.* § 1229a(c)(4).

For the foregoing reasons, the petition for review is GRANTED.