**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CELIA DIAZ MARTINEZ,<br>*Petitioner*,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br>*Respondent.* | No. 17-72186<br><br>Agency No.<br>A073-948-023 |
| CELIA DIAZ MARTINEZ, AKA Celia<br>Diaz, AKA Celia Diaz Martinez,<br>*Petitioner*,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br>*Respondent.* | No. 18-72034<br><br>Agency No.<br>A073-948-023<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 10, 2019
Pasadena, California

Filed October 30, 2019

Before:  Richard A. Paez and Richard R. Clifton, Circuit
Judges, and Gary S. Katzmann,* Judge.

Opinion by Judge Katzmann;
Dissent by Judge Clifton

## SUMMARY**

### Immigration

Granting Celia Diaz Martinez's petition for review of an order of the Board of Immigration Appeals and remanding, the panel held that: 1) absent any prejudice to the Government, a premature petition for review of an immigration order may ripen upon final disposition of the case by the BIA; and 2) the BIA abused its discretion in denying Diaz Martinez's appeal of an immigration judge's denial of her motion to reopen, where the IJ in the underlying removal proceeding ordered Diaz Martinez removed in absentia on the basis of an amended notice to appear of which she did not receive proper notice.

In 2007 Diaz Martinez was served with a notice to appear ("NTA") charging her as an alien present in the United States who had not been admitted or paroled and alleging that she arrived in the United States at or near San Ysidro, California, on or about August 25, 1989.

---

* The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In June of 2010, Diaz Martinez's counsel was personally served a notice of her next hearing, and Diaz Martinez submitted a change of address to the immigration court and the Government. That same day, the Government issued an amended NTA, in which it amended its factual allegations to charge that she entered the United States at or near an unknown place on or about an unknown date. A box was checked indicating that the amended allegations were "in lieu of" the allegations in the 2007 NTA. The certificate of service section listed Diaz Martinez's old address, not the new address she provided, and the boxes for means of service were all left blank. When Diaz Martinez did not appear at her next hearing, the IJ ordered her removed in absentia.

In 2017, Diaz Martinez filed a motion to reopen, which the IJ denied, and Diaz Martinez appealed to the BIA. While her appeal was pending with the BIA, she filed a petition for review with this court on August 22, 2017, and the BIA later dismissed her appeal on October 25, 2017.

Diaz Martinez also filed a second motion to reopen, this time with the BIA, which denied the motion, and Diaz Martinez sought review of that order in this court.

The panel held that it had jurisdiction over Diaz Martinez's first petition for review, concluding that, absent any prejudice to the Government, a petition for review of an IJ's order of removal, prematurely filed with this court prior to a final order from the BIA, may ripen upon final disposition of the case by the BIA. The panel explained that this court has allowed for premature appeals to ripen in civil cases and emphasized the importance of lenity when addressing premature appeals by pro se litigants, as Diaz Martinez was when she prematurely filed her petition for

review.  The panel also noted the persuasive reasoning of the Second, Third, and Eleventh Circuits, which have held that a premature petition for review can ripen, and declined to follow the contrary approach of the Fifth and Sixth Circuits.

As a threshold matter, the panel concluded that Diaz Martinez had sufficiently exhausted the argument that she lacked notice of the charges in the amended NTA.

Next, the panel held that the BIA abused its discretion in denying the appeal of the IJ's denial of her motion to reopen, explaining that her removal order relied on Diaz Martinez's admissions to the amended NTA, despite the fact that there was no evidence in the record that she received the required notice of the amended NTA.  The panel also concluded that this due process violation prejudiced Diaz Martinez, noting that: 1) she had plausible grounds for discretionary relief; 2) the failure to serve her deprived her of the opportunity to seek a continuance in light of the amended factual allegations; 3) she lacked notice of facts she would need to prove to qualify for relief; and 4) the order was not supported by substantial evidence, as it was based on an ineffective NTA.  The panel thus remanded to the BIA with instructions to reopen the removal proceedings.

Because the panel determined that the removal order was defective, the panel stated it would not reach Diaz Martinez's petition for review of her second motion to reopen.

Dissenting, Judge Clifton agreed with the majority that this court has subject matter jurisdiction over Diaz Martinez's first motion to reopen.  However, Judge Clifton dissented because: 1) Diaz Martinez failed to exhaust before the BIA the argument that the majority relies upon; and 2) to

obtain relief based on a purported due process violation, a petitioner must demonstrate prejudice, and Diaz Martinez did not.

## COUNSEL

Kathryn Marie Davis (argued), Supervising Attorney; Marcel Budiono (argued) and Octavio Velarde (argued), Certified Law Students; U.C. Irvine School of Law, Pasadena, California; Peter R. Afrasiabi, One LLP, Newport Beach, California; for Petitioner.

Shererase Rosalyn Pratt (argued), Senior Litigation Counsel; Anthony P. Nicastro, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

KATZMANN, Judge:

Petitioner Celia Diaz Martinez ("Diaz Martinez") challenges the denials, by an immigration judge ("IJ") and Board of Immigration Appeals ("BIA"), of two motions to reopen her removal proceedings. Diaz Martinez sought to reopen her removal proceedings after an IJ issued an in absentia removal order when she failed to appear at an immigration hearing. She filed the first motion to reopen ("first MTR") with an IJ, who denied the motion shortly after suggesting that Diaz Martinez would have time to review the record and amend the motion. Diaz Martinez then appealed to the BIA for review of the denial and, before the BIA

denied that appeal, Diaz Martinez pro se petitioned for review of the IJ's denial of her first MTR to this court. The BIA subsequently denied her appeal. With new counsel, Diaz Martinez filed a second motion to reopen ("second MTR") with the BIA, which the BIA also denied and Diaz Martinez petitioned for review.

Whether we have jurisdiction to review the denial of the first MTR, where Diaz Martinez filed her petition before the BIA issued a final decision, is an issue of first impression for our court. Diaz Martinez argues that we have subject matter jurisdiction over her pro se petition because the BIA issued a decision before this court considered the merits of her case, thus curing any defect in her premature filing in this court. Assuming jurisdiction, Diaz Martinez asks us to void the IJ's in absentia removal order and remand this case to the BIA to reopen because (1) she lacked notice of the amended charges against her; (2) she lacked notice of the time of her final removal hearing; (3) the IJ and BIA wrongly ignored the statements of Diaz Martinez's counsel; (4) the IJ should have waited to rule on Diaz Martinez's MTR because of her history of diligence; and (5) the BIA abused its discretion by not reopening the case sua sponte. Diaz Martinez further argues that the BIA should have granted Diaz Martinez's second MTR.

We determine that we have jurisdiction over the petition for review of the first MTR, as the petition ripened prior to consideration on the merits here. Pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii), we conclude that Diaz Martinez lacked notice of the amended charges, and therefore the removal order was unsupported by substantial evidence and the BIA abused its discretion in failing to reopen her proceedings. Accordingly, we grant the petition for review. We do not reach Diaz Martinez's alternative arguments.

## I.  Factual and Procedural Background

Diaz Martinez is a 47-year-old citizen of El Salvador without legal status in the United States.  Diaz Martinez has five U.S. citizen children, two of whom have medical issues.

On February 9, 2007, Diaz Martinez was served in person with a notice to appear ("2007 NTA") and taken into immigration custody.  She was charged with violating section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as "an alien present in the United States who has not been admitted or paroled."  8 U.S.C. § 1182 (2007). The 2007 NTA alleged the following facts:

> 1) You are not a citizen or national of the United States;
>
> 2) You are a native of El Salvador and a citizen of El Salvador;
>
> 3) You arrived in the United States at or near San Ysidro, California, on or about August 25, 1989;
>
> 4) You were not then admitted or paroled after inspection by an Immigration Officer.

The 2007 NTA was stamped as received by the Department of Justice on February 15, 2007 and stamped as an exhibit by the IJ on March 5, 2007.  On March 7, 2007, Diaz Martinez was released on bond from immigration custody in Florence, Arizona.

Over the course of three years, Diaz Martinez diligently attended numerous hearings in immigration court and communicated her address changes to the Government (i.e.,

the Department of Homeland Security).  Diaz Martinez's first master calendar hearing was scheduled for May 1, 2007 at 8:30 a.m.  On May 1, the IJ granted her pro se motion for a change of venue to the immigration court in Los Angeles, California.  On May 17, 2007, the Los Angeles immigration court served Diaz Martinez by mail with a notice of hearing, scheduling a master calendar hearing at the Los Angeles immigration court for June 13, 2007 at 9:00 a.m.  On June 13, 2007, the immigration court served her in person with a new notice of hearing, scheduling a master calendar hearing for February 25, 2008 at 9:30 a.m.  On February 12, 2008, the immigration court issued another new notice of hearing, scheduling an individual hearing for June 2, 2008 at 9:30 a.m.  The certificate of service box indicates that the new notice was served by mail to both Diaz Martinez and her then-counsel.  On February 25, 2008, Diaz Martinez was served in person[1] with another notice of hearing, again scheduling an individual hearing for June 2, 2008 at 9:30 a.m.  On June 2, 2008, the immigration court served Diaz Martinez and her attorney in person with a new notice of hearing, reassigning Diaz Martinez's case to a new IJ and scheduling a master calendar hearing for November 25, 2008 at 9:30 a.m.  That same day, Diaz Martinez filed a change of address form with the immigration court.  On December 3, 2009, the immigration court issued a new notice of hearing, scheduling a master calendar hearing for June 23, 2010 at 8:30 a.m.  The notice indicated that it was served by mail on Diaz Martinez's counsel at the time.

---

[1] The record suggests Diaz Martinez appeared for the previously scheduled February 25, 2008 master calendar hearing that the immigration court had already rescheduled for June 2, 2008 as an individual hearing.

On June 23, 2010, Diaz Martinez and her then-counsel appeared before the immigration court, and the court issued a notice of hearing for another master calendar hearing. The notice was served on Diaz Martinez's counsel in person and indicated that a master calendar hearing would be held on October 27, 2010 at 8:00 a.m., with the "8" partly obscured by a pen marking. The notice also indicated that the next hearing would be a removal hearing and failure to appear would, absent exceptional circumstances, result in ineligibility for certain forms of relief under the INA.

That same day, June 23, 2010, two other critical events occurred. First, Diaz Martinez submitted a change of address form, providing a new address.[2] The IJ stamped the form as received on June 23, 2010, and Diaz Martinez signed the form, certifying that she had mailed a copy of it to the Government. Second, the Government issued an "Additional Charges of Inadmissibility/Deportability" form ("amended NTA"), which amended the 2007 NTA. The Government lodged no additional charges against Diaz Martinez, but it amended the factual allegations against her. The Government alleged, "You entered the United States at or near an unknown place on or about an unknown date," removing the references to El Salvador and the 1989 entry. A box was checked indicating that the amended factual allegations were "in lieu of," rather than "in addition to," the facts alleged in the 2007 NTA. Thus, the amended NTA no longer included her approximate date or place of entry into the United States. The IJ also stamped the amended NTA as received on June 23, 2010. The certificate of service section of the form listed Diaz Martinez's old address, not the new

---

[2] An immigrant in removal proceedings is required to provide the immigration court with notice of a change in address, and she has "five days" to do so after changing her address. 8 C.F.R. § 1003.15(d)(2).

address provided on June 23, 2010, and the boxes for means of service (in person, certified mail, regular mail, and oral notice) were all left blank. Neither the Government nor Diaz Martinez signed the certificate of service box. The record does not provide any other evidence that Diaz Martinez or her counsel were served by mail or in person with the amended NTA.

On October 27, 2010, Diaz Martinez was not present at the hearing, and the IJ ordered her removed in absentia. The IJ marked the following as her finding: "At a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability. I find removability established as charged." The IJ's final order concluded that "[t]he respondent shall be removed to EL SALVADOR on the charge(s) contained in the Notice to Appear."

Diaz Martinez claims that in October 2010, she went to the Los Angeles immigration court for her hearing, but the courtroom was locked, and court staff told her that the IJ was not present. According to Diaz Martinez, court staff told her that she would receive notice of a new hearing date and time in the mail. Diaz Martinez did not receive a new notice of hearing. Diaz Martinez then made payments to a notario who had previously helped her so that he would reopen her case. She later learned that he never did so, and she instead had been ordered removed. In 2014, she hired new counsel to reopen her case, but he died in a car accident, and no motion to reopen was filed.

In 2017, Diaz Martinez retained new counsel. On June 1, 2017, counsel filed a motion to reopen removal proceedings (the "first MTR") and a motion to stay removal in the immigration court. The first MTR challenged Diaz Martinez's order of removal on due process grounds, arguing that "[d]ue process requires that the alien be

provided with notice of proceedings and an opportunity to be heard.  Notice must be reasonably calculated to apprise the alien of his or his scheduled hearing and the immigration charges against him."  The first MTR further stated that "[t]his motion will be supplemented after counsel has had the opportunity to review the Court's Record of Proceedings."  That same day, then-counsel for Diaz Martinez sent a request to the Executive Office for Immigration Review ("EOIR") for audio of "Respondent's hearings, including her removal hearing on October 27, 2010."

A little over a week later, on June 9, 2010, the IJ denied the first MTR because the motion was not supported by documentary evidence.  In a separate order issued that same day, the IJ granted the motion for a stay of removal to enable counsel to review the record and resubmit the MTR.  The decision was served on Diaz Martinez's counsel by mail, under a cover letter dated June 12, 2017.

Diaz Martinez appealed the denial of the first MTR to the BIA.  The Government then filed a motion to vacate or terminate the stay of removal, and the IJ granted the motion on July 12, 2017, finding that Diaz Martinez had failed to timely resubmit her motion with supporting documentation.[3]

---

[3] The actions of the IJ are puzzling.  By denying the first MTR, the IJ had issued a final, appealable order on June 9, 2010—and, in fact, that is the order on the first MTR that the BIA ultimately reviewed.  An immigrant has 30 days to appeal the decision of an immigration judge, 8 C.F.R. § 1003.38, and because there is no suggestion of any defect regarding the timing of Diaz Martinez's appeal, it would appear that she already had appealed the June 9 order to the BIA before the IJ's later order vacating her stay on July 12.  The IJ's jurisdiction, then, was questionable after the June 9 order.  Because an immigrant cannot supplement her record in the BIA—record development only occurs

The order terminating the stay of removal was served by mail on Diaz Martinez's counsel on July 13, 2017.

On August 3, 2017, Diaz Martinez pro se filed a petition for review of the IJ's decision in the Ninth Circuit. On August 22, 2017, her counsel filed with the BIA a brief in support of Diaz Martinez's appeal of the IJ's denial of the first MTR. On October 25, 2017, the BIA dismissed the appeal of the IJ's June 9, 2017 order denying the first MTR. The following day, the Government filed a motion to dismiss Diaz Martinez's federal petition for lack of subject matter jurisdiction. We denied the motion to dismiss without prejudice and ordered further briefing from both parties as to "whether the BIA's October 25, 2017 order cures any prematurity in the filing of this petition." We also granted a motion to stay removal pending the outcome of these proceedings.

On February 1, 2018, through new counsel, Diaz Martinez filed a second MTR, this time directly with the BIA. The second MTR included a declaration in which Diaz Martinez explained the circumstances around her absence from the October 27, 2010 immigration court hearing, among other things. The BIA denied the MTR on June 20, 2018, finding that it was filed untimely, was number-barred, and included an incomplete declaration. The BIA further concluded that "[w]e also do not find that the respondent's due process rights were violated based on a lack of notice."

---

before an IJ, 8 C.F.R. § 1003.1(d)(3)(iv)—it is unclear how Diaz Martinez could then have supplemented her motion. Moreover, it is unclear whether Diaz Martinez or her counsel ever received the audio she had requested from the EOIR because Diaz Martinez *again* requested audio from her hearings on July 24, 2017, so she may have still been unprepared to supplement her motion as of July 12.

Diaz Martinez then sought review of the BIA's denial of the second MTR with this court.

We review the consolidated petitions for review of Diaz Martinez's first and second MTRs.

## II. Jurisdiction

"[W]e retain jurisdiction to determine our own jurisdiction." *Ramirez v. Lynch*, 810 F.3d 1127, 1130 (9th Cir. 2016). Diaz Martinez and the Government dispute whether we have jurisdiction over her petition for review of the first MTR, docketed at 17-72186. There is no dispute, however, as to our jurisdiction over her petition for review of the second MTR, docketed at 18-72034. Because the second MTR poses potential procedural obstacles to reaching consideration on the merits that the first MTR does not, we begin with the issue of jurisdiction over the first MTR.[4] Both MTRs seek to challenge an in absentia removal order, which we have jurisdiction to review pursuant to 8 U.S.C. § 1229a(b)(5)(D).

To determine our jurisdiction we resolve the following issue: can a petition for review of an IJ's final order of removal, prematurely filed with our court prior to a final order from the BIA, ripen into an effective appeal pursuant to Federal Rule of Appellate Procedure 4(a)(2) upon

---

[4] For instance, the BIA concluded that Diaz Martinez's second MTR was number-barred. Typically, petitioners may file only one motion to reopen. 8 U.S.C. § 1229a(c)(7)(A). A court may, in certain circumstances, equitably toll the number-bar to a subsequent motion to reopen. *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1223–26 (9th Cir. 2002). Because we have jurisdiction over the first MTR and determine that the removal order is defective, we do not reach the petition for review of the second MTR, and any legal issues unique to that petition.

issuance of a final ruling from the BIA? We previously left that question open, "tak[ing] no position on the current circuit split regarding treatment of premature petitions generally." *Abdisalan v. Holder*, 774 F.3d 517, 527 (9th Cir. 2014) (en banc). We have made clear that, pursuant to statutory requirements, our court's jurisdiction to review immigration court decisions is limited to final orders of removal from the BIA. *See Alcala v. Holder*, 563 F.3d 1009, 1013 (9th Cir. 2009) (citing 8 U.S.C. § 1252); *see also Shaboyan v. Holder*, 652 F.3d 988, 989–90 (9th Cir. 2011) (finding that an interim order from the BIA denying a stay of removal did not qualify as a reviewable final order of removal but leaving open the possibility that the order could be reviewed as part of the review of a final order of removal). In *Abdisalan*, we explained that "when the BIA remands to the IJ for any reason, no final order of removal exists until all administrative proceedings have concluded . . . [W]hen the BIA issues a mixed decision, no aspect of the BIA's decision is 'final' for the purpose of judicial review." 774 F.3d at 526. Thus, while pending administrative proceedings on remand may preclude the ripening of a premature petition to the court, we have not decided whether a premature petition may ripen upon final disposition of all issues by the BIA. Upon review of both our civil case law and persuasive authority from our sister courts in the Second, Third, and Eleventh Circuits, we now hold that such a petition may ripen, providing us jurisdiction over Diaz Martinez's prematurely filed pro se petition for review.

## 1. Ripening of Premature Appeals in Civil Cases

It is undisputed that Diaz Martinez's petition for review of the first MTR was premature when it was filed with this court, as there was no final order. The issue is instead whether her premature pro se petition may ripen upon the

issuance of a final order. Our civil case law allows for premature appeals to ripen and suggests lenity in treatment of pleadings by pro se parties.

We have allowed for premature appeals to ripen in civil cases. Absent special circumstances, a litigant may only appeal from a final judgment. *See Marshall v. Sawyer*, 301 F.2d 639, 643 (9th Cir. 1962) (noting that orders dismissing complaints without dismissing the entire action are not appealable unless it is clear that no amendment to the complaint could possibly save the action); *see also Serine v. Peterson*, 989 F.2d 371, 372 (9th Cir. 1993) (holding that the findings and recommendation of a magistrate judge are not appealable until adopted by the district court). However, a notice of appeal directed at a non-appealable order can serve as a notice of appeal directed at a subsequently entered, appealable final decision. We prioritize substantive rights of parties over procedural defects in appeals, allowing premature appeals to ripen absent any prejudice to the appellee. In *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269, 271 (9th Cir. 1965), we interpreted a plaintiff's premature appeal of a non-final order dismissing only a single claim as directed at the ensuing final judgment rather than the dismissal of the claim, thus treating the appeal as valid. Similarly, in *Eason v. Dickson*, 390 F.2d 585 (9th Cir. 1968), we found that the plaintiff's premature notice of appeal became an effective notice of appeal when the district court issued a final decision and "the premature notice did not adversely 'affect substantial rights' of the prevailing adversary." *Id.* at 588 (quoting *Firchau*, 345 F.2d at 271). Premature appeals, moreover, do not divest the lower court of its jurisdiction to issue a subsequent final and appealable judgment. *See Ruby v. Secretary of United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966); *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 818 (9th Cir. 1961).

In allowing premature appeals to ripen, we use "a pragmatic approach to finality in situations where events subsequent to a nonfinal order fulfill the purposes of the final judgment rule." *Cato v. Fresno City*, 220 F.3d 1073, 1074–75 (9th Cir. 2000) (quoting *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1075 (9th Cir. 1994)). We can assume jurisdiction based on a prematurely filed notice of appeal when "subsequent events can validate [the] prematurely filed appeal." *Anderson v. Allstate Ins. Co.*, 630 F. 2d 677, 681 (9th Cir. 1980).

We have allowed premature notices of appeal directed at all manner of non-appealable orders to ripen into notices of appeal of subsequent, appealable judgments. *See, e.g.*, *Cato*, 220 F.3d at 1074–75 (reviewing an order sanctioning attorneys); *Eastport Assocs. v. City of L.A.*, 935 F.2d 1071, 1075 (9th Cir. 1991) (reviewing a decision not to abstain); *Anderson*, 630 F.2d at 681 (reviewing an order dispensing of some but not all claims). We have also reviewed amended orders where the notice of appeal was filed after the original order but not refiled after the amended order. *See, e.g.*, *Bruce v. United States*, 759 F.2d 755, 757 (9th Cir. 1985).

We also emphasize the importance of lenity when addressing premature appeals by pro se litigants, as Diaz Martinez was when she prematurely filed a petition for review of her first MTR with this court. "[W]e have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (concerning an inmate's Fourth Amendment excessive force claim) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)); *see also Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to

construe pro se pleadings liberally."). Thus, an appellant's experience weighs further in favor of allowing an appeal to ripen.

## 2. Circuit Split on the Ripening of Premature Petitions for Review

Diaz Martinez cites three cases from the Second, Third, and Eleventh Circuits to argue that "a premature petition of review can ripen because the cases are more analogous to the case at bar." *See Jimenez-Morales v. U.S. Atty. Gen.*, 821 F.3d 1307 (11th Cir. 2016); *Khan v. Attorney Gen. of U.S.*, 691 F.3d 488 (3d Cir. 2012); *Herrera-Molina v. Holder*, 597 F.3d 128 (2d Cir. 2010). The Government instead contends that our court should "align itself with the Fifth and Sixth Circuits and dismiss the petition."[5] *See Moreira v. Mukasey*, 509 F.3d 709, 713 (5th Cir. 2007); *Jaber v. Gonzales*, 486 F.3d 223, 228–30 (6th Cir. 2007). We agree with the approach of the Second, Third, and Eleventh Circuits and exercise jurisdiction over Diaz Martinez's petition for review. Here, as in *Herrera-Molina*, *Khan*, and *Jimenez-Morales*, the jurisdictional defect in filing the petition was cured by a final judgment from the BIA before this court had considered any aspect of the

---

[5] Citing *Bowles v. Russell*, 551 U.S. 205, 214 (2007), the Government also argues that courts have "no authority to create equitable exceptions to jurisdictional requirements." There, the Supreme Court rejected the "unique circumstances doctrine," which would otherwise have allowed a federal district court to *reopen* and extend the time for filing a notice of appeal *after* the statutory period had ended. *Id.* In contrast, here, Diaz Martinez did file a petition for review, and the question is whether the underlying petition may ripen when the BIA issues a final order. We also note that *Bowles* preceded the decisions from our sister circuits with which we align ourselves.

petition, and the Government has shown no prejudice resulting from the premature filing.

In *Herrera-Molina*, after an IJ denied Herrera-Molina withholding of removal, Herrera-Molina filed both an appeal with the BIA and a petition for review with the Second Circuit.   597 F.3d at 131–32.   The BIA subsequently dismissed Herrera-Molina's appeal.  *Id.*  The Government argued that the Second Circuit lacked jurisdiction because "at the time that the parties filed their briefs, Herrera-Molina's appeal of the IJ's denial of withholding of removal was still pending before the BIA" and thus "the reinstated order of deportation was not a 'final' order of removal over which [the Second Circuit] could exercise jurisdiction." *Id.* at 132 (citing *Chupina v. Holder*, 570 F.3d 99, 103–04 (2d Cir. 2009)).   The Second Circuit decidedly rejected the Government's argument that it lacked jurisdiction, holding that "[a] premature petition for review of a not-yet-final order of removal can become a reviewable final order upon the adjudication of remaining applications for relief and protection, provided that the [Government] has not shown prejudice."   *Id.* (citing *Lewis v. Gonzales*, 481 F.3d 125, 128–29 (2d Cir. 2007); *Foster v. INS*, 376 F.3d 75, 77 (2d Cir. 2004)).  The Second Circuit noted that the Government did not claim prejudice, "nor do[es the court] "even if Herrera-Molina's initial petition were premature, . . . the reinstatement of his prior deportation order is now a reviewable final order and [the court] proceed[ed] to the merits of his arguments." *Id.*

The Third Circuit in *Khan* followed the Second Circuit's approach to the ripening of a premature petition.   There, Khan overstayed his visa and sought asylum, withholding of removal, and Convention Against Torture ("CAT") protection.   *Khan*, 691 F.3d at 491.   The IJ denied the

applications, and the BIA affirmed the IJ's denial.  *Id.* at 491–92.  Several years later, Khan filed an emergency motion for a stay of removal and an MTR with the BIA.  *Id.* at 492.  Khan petitioned for review of the BIA's denial of the motion for a stay of removal and the MTR in the Third Circuit, before the BIA had issued a decision.  *Id.*  The BIA then issued a final order, denying the motions.  *Id.*  The Government "contend[ed] that the petition for review should be dismissed because it was filed almost two weeks prior to the BIA's [final order], making it premature and depriving th[e court] of jurisdiction."  *Id.*  The Third Circuit rejected the Government's argument:

> So long as the [Government] has not shown that [it] will suffer prejudice resulting from the premature filing of a petition for review, and we have yet to take action on the merits of the appeal, a premature petition for review can ripen once the BIA issues a final order on a motion to reopen.  We see no reason to treat premature petitions for review from final orders of removal differently than we have treated premature notices of appeal in other types of cases.

*Id.* at 494.  The Third Circuit adopted the Second Circuit's approach because it prioritized "practical, not technical considerations" and found that the Government was not prejudiced by allowing for the premature petition to ripen.  *Id.* at 493.

The Eleventh Circuit reached the same conclusion in *Jimenez-Morales*.  821 F.3d at 1308–09.  There, a prior removal order was reinstated after Jimenez-Morales reentered the United States.  *Id.* at 1307–08.  He then

expressed fear of returning and was placed in reasonable fear proceedings. *Id*. at 1308. Before the proceedings had concluded, he petitioned the Eleventh Circuit for review. *Id*. Before oral argument, however, an asylum officer made a negative reasonable fear finding, the immigration court denied him relief, and the removal order became final.[6] *Id*. (citing 8 U.S.C. § 1252(a)(1); *Avila v. U.S. Att'y Gen.*, 560 F.3d 1281, 1284 (11th Cir. 2009)). The Eleventh Circuit thus had to decide "whether the conclusion of the reasonable fear proceeding made Mr. Jimenez-Morales' premature [] petition for review ripen into one that gave [it] jurisdiction." *Id.* The Eleventh Circuit agreed with the Second and Third Circuits, because such an approach to premature petitions "is consistent with how [the court] ha[d] addressed premature appeals in other contexts." *Id* at 1308–09 (citing *Robinson v. Tanner*, 798 F.2d 1378, 1385 (11th Cir. 1986)); *see also Robinson*, 798 F.2d at 1385 (concluding that "a premature notice of appeal is valid if it is filed from an order dismissing a claim or party, and is followed by a subsequent final judgment, even without a new notice of appeal being filed"). The premature petition had ripened, and the Eleventh Circuit had jurisdiction. *Jimenez-Morales*, 821 F.3d at 1309.

In so holding, the Third and Eleventh Circuits considered and rejected the approach of the Fifth and Sixth Circuits that the Government advances here. *See id*. at 1308–09

---

[6] "If the immigration judge concurs with the asylum officer's determination that the alien does not have a reasonable fear of persecution or torture, the case shall be returned to the Service for removal of the alien. No appeal shall lie from the immigration judge's decision." 8 C.F.R. § 208.31(g)(1). Because regulations do not allow for an appeal to the BIA where both an asylum officer and an IJ have found no reasonable fear of persecution or torture, the IJ's decision is final for administrative purposes. The petitioner's last available remedy is a petition for review in the federal circuit court.

(reviewing the circuit split and "sid[ing] with the Second and Third Circuits" rather than the Fifth and Sixth Circuits); *Khan*, 691 F.3d at 493 (noting that "[t]here are differing views among our sister Courts of Appeals with regard to whether premature petitions for review can ripen upon a final decision by the BIA" and finding that such petitions can ripen). The Sixth Circuit found that it did not have jurisdiction over a premature petition for review of a BIA decision in *Jaber*. 486 F.3d at 228–30. There, the immigration court ordered Jaber removed and denied his MTR and motion for reconsideration. *Id.* at 227. While his appeal was pending with the BIA, Jaber also filed a habeas corpus petition in federal district court. *Id.* Finding that the habeas petition was a challenge to a final deportation order, the district court transferred the case to the Sixth Circuit pursuant to the REAL ID Act, Pub. L. No. 109-13, Div. B. § 106, 119 Stat. 231, 311 (2005), after which the BIA issued a final order, *Jaber*, 486 F.3d at 227–28. Construing the habeas petition as "a petition for review of the as-yet-unentered August 18, 2005, BIA decision denying his appeal of the IJ's denial of the [MTR]," the Sixth Circuit found that it lacked jurisdiction because the underlying BIA decision was not yet final when the district court transferred the case. *Id.* at 228. Similarly, the Fifth Circuit in *Moreira*, dealt with a habeas petition filed with a district court and subsequently transferred to the appeals court pursuant to the REAL ID Act. 509 F.3d at 711. Moreira had filed the habeas petition while his pro se appeal was pending with the BIA. *Id.* Relying on *Jaber* and *Brion v. INS*, 51 F. App'x 732, 733 (9th Cir. 2002) (unpublished), the Fifth Circuit found that a

premature petition in federal court could not be cured by a final BIA order.**[7]**  *Id.* at 713.

The scenarios reviewed in *Herrera-Molina*, *Khan*, and *Jimenez-Morales* are closely analogous to the present situation; whereas the procedural posture of the habeas petitions in *Jaber* and *Moreira* are less so.

### 3.  Diaz Martinez's Premature Petition for Review

As we have noted, our precedent supports the ripening of premature appeals in cases involving a variety of non-final orders.  Allowing subsequent final judgments from the BIA to cure jurisdictional defects in immigration petitions for review is in keeping with our prioritization of the substantive rights of parties over technical defects and the inclination toward lenity in the handling of pro se litigants.  Here, Diaz Martinez, proceeding pro se, filed a petition for review with this court, challenging the IJ's denial of her first MTR, before the BIA had reviewed the IJ's order.  The BIA then issued a final order of removal, thus curing the defect.  The Government, moreover, has established no prejudice from allowing the appeal to ripen.  Therefore, we hold that we have jurisdiction over Diaz Martinez's case because, absent any prejudice to the Government, a premature petition for

---

**[7]** In *Brion*, a non-precedential opinion, we held that "the fact that the BIA ultimately issued a final order of deportation [does not] 'cure' a petition that was filed prematurely."  51 F. App'x at 733 (9th Cir. 2002).  There, critically, the BIA's order included a remand to the IJ for further proceedings on issues that had not been appealed to the BIA at the time Brion petitioned our court for review.  *Id.*  More significantly, as noted above, we have recently recognized that our court has *not* yet taken a position on the ripening of non-final immigration orders.  *Abdisalan*, 774 F.3d at 527.

review of an immigration order may ripen upon final disposition of the case by the BIA.

We note that the posture of the matter before us aligns with *Herrera-Molina*, *Khan*, and *Jimenez-Morales*. Here, as in those cases, the BIA issued a reviewable final order prior to the court's consideration of any aspect of the petition for review. *Herrera-Molina*, 597 F.3d at 132; *Khan*, 691 F.3d at 494; *Jimenez-Morales*, 821 F.3d at 1309. The Government in those cases showed no prejudice resulting from the erroneous premature filing and has not done so here. *Herrera-Molina*, 597 F.3d at 132; *Khan*, 691 F.3d at 494–95; *Jimenez-Morales*, 821 F.3d at 1309. Diaz Martinez appealed from the IJ's order denying her motion to reopen. The orders appealed from in *Herrera-Molina*, *Khan*, and *Jimenez-Morales* were a denial of withholding of removal, a denial of a motion for an emergency stay and a motion to reopen, and a finding of no reasonable fear of persecution or torture, respectively. *Herrera-Molina*, 597 F.3d at 132; *Khan*, 691 F.3d at 492; *Jimenez-Morales*, 821 F.3d at 1308. We find unavailing the Government's contention that these cases are inapposite because of the type of non-final order at issue; the Government has proffered no reason why this would affect the ability of the petition to ripen. In each of these cases, the basis for the petition was a non-final IJ or BIA order that was later finalized by a BIA judgment.

In sum, guided by our jurisprudence in civil cases allowing premature appeals to ripen and noting the persuasive reasoning of the Second, Third, and Eleventh Circuits, in cases with factual and legal circumstances that align with those presented here, we join those courts in holding that, absent any prejudice to the Government, a premature petition for review of an immigration order may ripen upon final disposition of the case by the BIA. We

therefore have jurisdiction to review Diaz Martinez's petition for review of the BIA's denial of her first MTR.

## III.    Merits

With jurisdiction established over Diaz Martinez's petition for review of her first MTR, we turn to the merits of her contention that the in absentia removal order imposed by the IJ should be vacated and the BIA abused its discretion in denying such relief.

### 1.  Legal Background

An IJ may issue an in absentia removal order if, after the requisite written notice was provided, an immigrant does not attend her immigration hearing and the Government establishes that she is removable.    8 U.S.C. § 1229a(b)(5)(A); *see also United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) ("Due process always requires, at a minimum, notice and an opportunity to respond."); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (identifying "notice and [an] opportunity for [a] hearing appropriate to the nature of the case" as the "essential principle[s] of due process").  "IJs are statutorily authorized to order aliens removed in absentia only 'if the [Government] establishes by clear, unequivocal, and convincing evidence that . . . the alien is removable' as charged in the NTA."  *Al Mutarreb v. Holder*, 561 F.3d 1023, 1028 (9th Cir. 2009) (quoting 8 U.S.C. § 1229a(b)(5)(A)).  "[S]ubstantial evidence [must] support[] the IJ's finding that the [Government] met its high burden of proving removability."  *Id.* (citing *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 679 (9th Cir. 2005)).

The written notice requirement of an in absentia removal order applies both to the charges and conduct alleged and the

date and time of the removal hearing. "In removal proceedings under [8 U.S.C. §] 1229a . . . , written notice (in this section referred to as a 'notice to appear' ["NTA"]) shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying" various things about the proceedings, including "[t]he charges against the alien." 8 U.S.C. § 1229(a)(1). "[P]aragraph (1) [of 1229(a)] bears on the meaning of a 'notice to appear,'" and it "speaks in definitional terms." *Pereira v. Sessions*, 138 S. Ct. 2105, 2114, 2116 (2018). Among other requirements, the NTA must include the "nature of proceedings against the alien," "legal authority under which the proceedings are conducted," "acts or conduct alleged to be in violation of law," and "charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(A)–(D). Section 1229(a)(2) further provides that, "in the case of any change or postponement in the time and place of such proceedings," written notice, by personal service or mail, must be provided to an alien with the new time and place of the proceeding and the consequences of failure to attend the hearing.

At a removal hearing, the IJ:

> shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein. If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, *the immigration judge may determine that removability as charged*

> *has been established by the admissions of the*
> *respondent . . .*

8 C.F.R. § 1240.10(c) (emphasis added). The Government may add or substitute immigration charges and factual allegations in writing "at any time during the proceeding," provided that "[t]he alien in removal proceedings shall be served with a copy of these additional charges and allegations." *Id.* § 1240.10(e). The IJ then "shall read the additional factual allegations and charges to the alien and explain them to him or her," and "advise the alien, if he or she is not represented by counsel, that the alien may be so represented, and that he or she may be given a reasonable continuance to respond to the additional factual allegations and charges." *Id.* The IJ "may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service." *Id.* § 1240.6.

An in absentia removal order may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title." 8 U.S.C. § 1229a(b)(5)(C). The motion to reopen must "state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits and other evidentiary material," and a "motion to reopen for the purpose of acting on an application for relief must be accompanied by the appropriate application for relief and all supporting documents." 8 C.F.R. § 1003.23(b)(3). Judicial review of an in absentia removal order is "confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." 8 U.S.C. § 1229a(b)(5)(D).

## 2. Standard of Review

We review the denial of an MTR for abuse of discretion. *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to the law." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) (internal quotation and citation omitted). We review de novo the BIA's determination of purely legal questions, including claims of due process violations. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). "The sufficiency of [an] NTA is a question of law, which is reviewed de novo." *Kohli v. Gonzales*, 473 F.3d 1061, 1065 (9th Cir. 2007) (citing *Lopez-Urenda v. Ashcroft*, 345 F.3d 788, 791 (9th Cir. 2003)).

## 3. Discussion

The inquiry before us is a narrow one: Did the BIA abuse its discretion in denying the appeal of an MTR, where the IJ in the underlying removal proceeding ordered Diaz Martinez removable in absentia on the basis of an amended NTA of which she did not receive proper notice, pursuant to 8 U.S.C. § 1229(a)(1)? Because the record provides no evidence of proper service of the amended NTA, as required by due process, and the IJ ordered Diaz Martinez removed based on admissions to the charges for which she did not receive notice, the in absentia removal order was not supported by substantial evidence. The BIA abused its discretion in failing to reopen proceedings that had a facially apparent due process violation and vacate the removal order that was unsupported by substantial evidence. *See* 8 U.S.C. § 1229a(b)(5)(C).

## A. Exhaustion

As a threshold matter, Diaz Martinez must preserve issues for appeal by raising them with the BIA.  8 U.S.C. § 1252(d).  "[W]e do not employ the exhaustion doctrine in a formalistic manner, but rather inquire into whether the issue was before the BIA such that it had the opportunity to correct its error." *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008).  "[O]ur precedent requires nothing more than" putting "the BIA on notice" of a challenge such that the BIA "had an opportunity to pass" on it.  *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004).  Of course, each case turns on its own facts and circumstances.  The use of the phrases "lack of notice" and seeking reopening "at any time" in briefs to the BIA may be sufficient in some instances to put the BIA on notice of the statute—8 U.S.C. § 1229a(b)(5)(C)(ii)—that provides jurisdiction to reopen a case for lack of notice at any time.  *See, e.g., Miller v. Sessions*, 889 F.3d 998, 1001 (9th Cir. 2018).

Diaz Martinez "put the BIA on notice" that she lacked notice of the amended charges such that the BIA had "an opportunity to pass" on the issue.  *See Zhang*, 388 F.3d at 721.  In her appeal of the IJ's denial of her MTR, Diaz Martinez raised the issue of proper notice: "Notice must be reasonably calculated to apprise the alien of his or his [sic] scheduled hearing and the immigration charges against him" (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Like in *Miller*, Diaz Martinez's language tracked a statute, 8 U.S.C. § 1229(a)(1)(D), which mandates written notice of "[t]he charges against the alien." She further noted that, "[p]ut simply, aliens are entitled to notice unless they fail to give a current address to the government or fail to let the government know when they move."  Diaz Martinez was not required to elaborate further

on the lack of notice argument to establish our jurisdiction. *See generally Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006). Diaz Martinez, therefore, raised and exhausted the issue of improper notice of the immigration charges lodged against her before the BIA.

## B. Lack of Service of the Amended NTA

Diaz Martinez argues that she was ordered removed on an ineffective NTA because the Government "did not properly service [her] with an effective amended NTA."[8] She contends that the 2007 NTA, for which the issue of notice is not contested, was subsequently replaced by the amended NTA, which is dated June 23, 2010. Because 8 C.F.R. § 1240.10 and 8 C.F.R. § 1003.0 require service of the amended NTA, and due process requires notice, *Dobrota v. INA*, 311 F.3d 1206, 1210 (9th Cir. 2002), Diaz Martinez contends that "the subsequent in absentia removal order is necessarily ineffective" (citing 8 C.F.R. § 1003.30).

The Government does not refute Diaz Martinez's assertions that notice requires proper service of the amended NTA or that due process requires proper notice. Instead, the Government argues that her "claims that she was not properly served with the amended NTA . . . are belied by the record" and that there is no "absence of evidence of service of the amended NTA." The Government characterizes Diaz Martinez's brief as claiming that "she was not properly served with the amended NTA, and that the original NTA is 'illegible' and 'lacks clarity as to the time of the hearing.'"

---

[8] Diaz Martinez also argues that the time listed on the notice of hearing was illegible. Because the in absentia removal order is invalid on other grounds, we do not reach whether the notice of hearing provided sufficient notice as to the date and time of the hearing.

The Government cites to the notice of hearing in the record to support its argument—not the amended NTA.

The Government mistakes proper service of the notice of hearing with proper service of the amended NTA and the charges therein.  The notice of hearing amended the time and date of Diaz Martinez's hearing.  The amended NTA, however, *replaced* the underlying factual allegations that the Government lodged against her.  Because both documents substitute elements of the underlying 2007 NTA, section 1229(a)(1) requires for each that "written notice" be given to an immigrant in removal proceedings.  Thus, the Government's citation to proper service of the notice of hearing does not establish proper service of the amended NTA.[9]

Contrary to the Government's characterization, the record instead provides no evidence that Diaz Martinez was served with the amended NTA, as required by 8 U.S.C. § 1229(a)(1), 8 C.F.R. § 1240.10, and 8 C.F.R. § 1003.0. *See also Dobrota*, 311 F.3d at 1210 ("To comport with due process requirements, the notice afforded aliens about deportation proceedings must be reasonably calculated to reach them.").  The record shows that Diaz Martinez submitted a change of address form on June 23, 2010, that the form was received by the IJ, and that Diaz Martinez certified she had served the Government by mail.  Unlike the change of address form, the amended NTA's certificate of service section was not completed.  In fact, it included only Diaz Martinez's previous address, not the address submitted on June 23, 2010.  The date, the means of service, the

---

[9] The BIA, in affirming the IJ's denial of Diaz Martinez's MTR, similarly only addressed the notice of hearing, concluding it was properly served, and did not address lack of notice of the amended NTA.

signature of Diaz Martinez, and the signature of the Department of Homeland Security Assistant Chief Counsel were all left blank. The amended NTA was, however, stamped as received by the IJ. Notice to Diaz Martinez's former address is no notice at all.

Section 1229(a)(1) unambiguously requires written notice, either through in person service or by mail to the immigrant or her counsel, of the NTA. Section 1229(a), as noted *supra* III.1, is a definitional statute, *Pereira*, 138 S. Ct. at 2108, under which the NTA must include the "nature of proceedings against the alien," "legal authority under which the proceedings are conducted," "acts or conduct alleged to be in violation of law," and "charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(A)–(D). The Government amended the "acts or conduct alleged to be in violation of law," but the amended NTA provides no proof of service on Diaz Martinez.

The IJ received this amended NTA and subsequently ordered Diaz Martinez removed in absentia. The IJ marked a box indicating that "[a]t a prior hearing the respondent admitted the factual allegations in the [charging document] and conceded removability. I find removability established as charged." Diaz Martinez, therefore, was removed without notice of or admission to the "acts or conducts alleged" underpinning her removal order.[10]   The "removability

---

[10] Diaz Martinez conceded to removability in the first instance with respect to factual allegations which were not the basis of the actual order. The factual allegations in the amended NTA were issued "in lieu" of the factual allegations to which she admitted in the 2007 NTA. The facts in the 2007 NTA were more specific and included Diaz Martinez's nationality and the date, location, and means of her arrival in the United States. The amended NTA, by contrast, alleged only that Diaz Martinez

finding [was thus] unsupported by substantial evidence.  As a result, the IJ was without statutory authority to order [Diaz Martinez] removed in absentia under 8 U.S.C. § 1229a(b)(5)(A)—which requires that removability be established by 'clear, unequivocal, and convincing evidence.'" *Al Mutarreb*, 561 F.3d at 1031.  The court thus concludes that Diaz Martinez was ordered removed on an ineffective NTA.**[11]**

---

entered the United States at an unknown place and time.  The amended NTA, therefore, replaced the specific factual allegations with more general factual allegations.

"[A]dmissions by an alien to facts alleged in an NTA, and concessions of removability, made in the 8 C.F.R. § 1240.10(c) 'pleading stage' of removal proceedings may be relied on by an IJ." *Perez-Mejia v. Holder*, 663 F.3d 403, 410 (9th Cir. 2011).  Because Diaz Martinez admitted to the specific factual allegations in the 2007 NTA, she would not have needed to prove those specific facts as part of an application for relief for removal in a proceeding based on the 2007 NTA.  Here, however, the Government replaced the 2007 NTA with the amended NTA, erasing the facts to which she had pleaded.  Under the amended NTA, she would now need to prove in immigration court her nationality, date of entry, and status as a minor when she entered to qualify for certain forms of relief.  She could no longer merely admit to those facts.  Thus, by amending the NTA without properly serving Diaz Martinez, she was deprived of notice of the facts she would need to prove by means other than admission in seeking relief from removal.

**[11]** As we noted in *Raya-Vaca*:

> [T]here are . . . two types of regulations: (1) those that protect fundamental due process rights, and (2) and those that do not. *Cf. United States v. Caceres,* 440 U.S. 741, 749–53 (1979). The second type of regulation only implicates due process concerns when the failure to comply with the regulation causes prejudice. *See id.* at 752–53; *United States v.*

*Calderon-Medina,* 591 F.2d 529, 531 (9th Cir. 1979); *see also Montes-Lopez v. Holder,* 694 F.3d 1085, 1093 (9th Cir. 2012) (explaining that the prejudice requirement in *Calderon-Medina* applies to the "violation of a relatively minor procedural rule," not "serious" regulatory violations). A violation of the first type of regulation, however, implicates due process concerns even without a prejudice inquiry. *See United States v. Reyes-Bonilla,* 671 F.3d 1036, 1045–46 (9th Cir. 2012) (holding, without considering prejudice apart from the plausibility of relief, that violation of regulation providing for right to counsel constituted denial of due process); *see also United States v. Vidal-Mendoza,* 705 F.3d 1012, 1015–16 (9th Cir. 2013) (holding, without prejudice inquiry, that immigration judge's failure to inform alien of eligibility for relief, as required by regulation, violated due process).

771 F.3d at 1205; *see also Noriega-Lopez v. Ashcroft,* 335 F.3d 874, 884 (9th Cir. 2003) (where the BIA lacks authority to issue a removal order, no prejudice showing is required); *Lazaro v. Mukasey*, 527 F.3d 977, 981 (9th Cir. 2008) ("If the IJ's amendment of Lazaro's NTA was *ultra vires,* he is not required to show prejudice to the outcome of his proceedings for relief to be granted."). We doubt that failure to notify an immigrant of the charges against her is a "minor" violation of a procedural rule. *See Lazaro*, 527 F.3d at 481.

It is clear, moreover, that the due process violation then prejudiced Diaz Martinez. She "is not required to prove that [s]he would have received discretionary relief . . . [and] only needs to show that [s]he has plausible grounds for relief." *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996). There are "at least three plausible factors that would support an application for discretionary relief" through NACARA or cancellation of removal: first, Diaz Martinez has lived in the United States for the last thirty years, after entering as a minor in 1989; second, she is a citizen of El Salvador; and third, she is the mother of five U.S. citizen children, two of whom have health issues which may demonstrate "an extraordinary need for . . . assistance." *Id.*

## IV.    Conclusion

We first answer a question of first impression before our court:  Can a petition for review of an IJ's final order of removal, prematurely filed with our court prior to a final order from the BIA, ripen into an effective appeal pursuant to Federal Rule of Appellate Procedure 4(a)(2) upon issuance of a final ruling from the BIA?  We determine that it may. We unanimously conclude that we have jurisdiction over the petition for review of the first MTR, as the petition ripened prior to consideration on the merits here.

We next return to the narrow inquiry before us:  Did the BIA abuse its discretion in denying the appeal of an MTR, where the IJ in the underlying removal proceeding ordered Diaz Martinez removable in absentia on the basis of an

---

Furthermore, the removal order, issued without service of the amended NTA, prejudiced Diaz Martinez because: (1) the failure to serve her with the NTA deprived her of the opportunity to seek a continuance, pursuant to 8 C.F.R. § 1003.30, to strengthen her application for relief from removal in light of the amended factual allegations; *see, e.g., Al Mutarreb*, 561 F.3d at 1031 n.9 (9th Cir. 2009) ("If [the government] had . . . attempted to amend the NTA on the spot to state additional charges, both the INA and due process would likely have required that the proceedings be continued while [the government] issued written notice of the new charges. . . ."); (2) she lacked notice of the facts she would need to prove to qualify for relief from removal, *see supra* n. 11, thus "obscur[ing] the charges against her or obstruct[ing] her ability to respond to the charges and present her requests for" relief, *Kohli*, 473 F.3d at 1068–69, and contravening basic principles of due process, such as an immigrant's right "to examine the evidence against [her and] to present evidence on [her] own behalf."   8 U.S.C. § 1229a(b)(4)(B); *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (holding that a full and fair hearing includes "a reasonable opportunity to present evidence"); and (3) Diaz Martinez's order of removal was ultimately not supported by substantial evidence, as it was based on an ineffective NTA, *see Al Mutarreb*, 561 F.3d at 1031.

amended NTA of which she did not receive proper notice, pursuant to 8 U.S.C. § 1229(a)(1)?  We have considered the views expressed by the dissent.  In the end, we conclude, respectfully, that the removal order relied on Diaz Martinez's admissions to the amended NTA, despite the fact that she received no notice of and made no admissions to charges and factual allegations contained in the amended NTA.  Accordingly, the removal order was unsupported by substantial evidence.  We thus grant the petition for review and remand to the BIA with instructions to reopen the removal proceedings.

**GRANTED, REMANDED**.

CLIFTON, Circuit Judge, dissenting:

I agree with the majority opinion that this court has subject matter jurisdiction over Diaz Martinez's first motion to reopen, where Diaz Martinez filed her petition before the BIA issued a final decision, as discussed in the opinion. I regret, however, that I must dissent from its ultimate resolution, for two separate reasons. First, Diaz Martinez failed to exhaust before the BIA the argument that the majority opinion relies upon, that the Amended NTA was ineffective because it was not served on her. Because she did not present that argument to the agency, she cannot obtain relief on it here. Second, to obtain relief based on a purported due process violation, a petitioner must demonstrate that she suffered prejudice as a result, and Diaz Martinez did not. The petition for review should be denied.

## I.  Exhaustion

As a general proposition, this court may not reach the merits of a legal claim not presented in administrative proceedings below, including due process claims involving no "more than 'mere procedural error' that an administrative tribunal could remedy." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).

At Diaz Martinez's original removal hearing, the IJ checked the box that "[a]t a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability. I find removability established as charged." The original NTA stated that Diaz Martinez arrived in the United States at or near San Ysidro, California, on or about August 25, 1989, and was not admitted or paroled after inspection. It also alleged she was a native and citizen of El Salvador. In her motion to change venue granted May 1, 2007, Diaz Martinez stated that she pleaded to "all the counts and allegations against her on the charging document," including that she arrived in the United States at or near San Ysidro, California, on or about August 1, 1989.

On June 23, 2010, the government submitted a Form I-261, Additional Charges of Inadmissibility / Deportability. The form did not indicate any additional charges being lodged against Diaz Martinez, but it did include one sentence in the section entitled: "In support of the additional charge(s) there is submitted the following factual allegation(s) in lieu of those set forth in the original charging document." The statement was: "You entered the United States at or near an unknown place on or about an unknown date." This document did not check a box indicating how it was delivered to her, but the address listed is her old address, which she indicated had changed in a filing to the court the same day.

There were two different arguments Diaz Martinez could have made regarding lack of notice. One argument, which she focused on before us, was that she failed to appear at the October 27, 2010, hearing before the IJ because she was not given proper notice of her hearing time. The other argument, upon which the majority opinion relies, was that she was not given proper notice of the charges against her because the Amended NTA was not properly served on her, having been mailed to an address that changed. Diaz Martinez never made the second argument to the BIA.

The majority opinion begins, on 28, by acknowledging the exhaustion requirement and follows with a description of our precedent with which I agree:

> "[W]e do not employ the exhaustion doctrine in a formalistic manner, but rather inquire into whether the issue was before the BIA such that it had the opportunity to correct its error." *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008). "[O]ur precedent requires nothing more than" putting "the BIA on notice" of a challenge such that the BIA "had an opportunity to pass" on it. *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004). Of course, each case turns on its own facts and circumstances.

But nothing in the actual facts and circumstances of this case supports a conclusion that the BIA was put on notice of the argument that the Amended NTA was not served on her. That argument was never made to the BIA.

Instead, the majority opinion presumes that by making the first argument regarding lack of notice of the October 27 hearing, Diaz Martinez also exhausted any other argument

that includes the magic words "lack of notice." The majority opinion argues, at 28, with citation to *Miller v. Sessions*, 889 F.3d 998, 1001 (9th Cir. 2018), for the proposition that "the use of the phrases 'lack of notice' and seeking reopening 'at any time' in briefs to the BIA may be sufficient in some instances to put the BIA on notice of the statute— 8 U.S.C. § 1229a(b)(5)(C)(ii)—that provides jurisdiction to reopen a case for lack of notice at any time." It concludes, at 28, that this case is like *Miller* because "Diaz Martinez's language tracked a statute, 8 U.S.C. § 1229(a)(1)(D), which mandates written notice of '[t]he charges against the alien.'" The problem is that Diaz Martinez never complained to the BIA about a lack of written notice of the charges against her. Her complaint to the BIA was about a purported failure to provide notice of the October 27 hearing.

In actuality, *Miller* illustrates what it means to put the BIA on notice, which Diaz Martinez did not do. In that case, the petitioner said she never received mailed notices of her removal hearing, and she was subsequently ordered removed in absentia. 889 F.3d at 1000. The government argued the petitioner could not seek relief under § 1229a(b)(5)(C)(ii) based on lack of notice because she sought relief before the IJ under § 1229a(b)(5)(C)(I), which authorizes the filing of a motion to reopen based on "exceptional circumstances" rather than a lack of notice. *Id.* at 1001. As described in our opinion, it was clear that the argument the petitioner presented was that her "failure to attend proceedings was due to lack of notice." *Id*. The factual basis for her contention was plain, even if she may have cited the wrong statutory provision.

That is not what happened here, however. There is nothing in the record or Diaz Martinez's briefs to us that supports the proposition that she ever argued to the agency

that she had not received proper service of the Amended NTA. In her motion to reopen before the IJ, Diaz Martinez argued about her failure to receive notice of the hearing, not any failure to receive notice of the Amended NTA. She made the same argument in her first motion to reopen before the BIA. Her second motion to reopen, filed directly with the BIA, made clear that the "lack of notice" argument presented to the BIA regarded "whether [Diaz Martinez] received sufficient notice to apprise her of her hearing date for October 27, 2010." There was no reference in that motion to the Amended NTA or any failure to notify her of the charges.

The majority opinion, at 30, chastises the government for "mistak[ing] proper service of the notice of hearing with proper service of the amended NTA and the charges therein." Similarly, it observes, at 30 n. 9, that the BIA "similarly only addressed the notice of hearing, concluding it was properly served, and did not address lack of notice of the amended NTA." But the government's argument and the BIA's discussion make perfect sense because it was the service of the notice of hearing, not the service of the Amended NTA, that was the subject of the argument Diaz Martinez made to the BIA. The majority opinion fails to point to anything presented by Diaz Martinez that should have prompted the government and the BIA to discuss notice of the Amended NTA. The claim that Diaz Martinez had not been given notice of the October 27 hearing was also the primary focus of the argument made to us. Before this court, Diaz Martinez sought to add more arguments, including this one. Her pro bono counsel on appeal and the students who participated with him should be commended for their ingenuity and diligence, but that does not overcome the fact that those arguments had not previously been presented to the BIA.

In sum, the BIA was not put on notice of the argument upon which the majority relies to grant the petition for review. Diaz Martinez's "failure to assert this claim before the BIA deprived it of the opportunity to address the issue and divests us of jurisdiction to review it." *See Segura v. Holder*, 605 F.3d 1063, 1066 (9th Cir. 2010). The majority opinion acknowledges that the law requires exhaustion. Holding that use of the term "lack of notice" in an argument to the BIA opens the door to any argument based on any lack of notice, even of a document that was not identified to the BIA, makes a mockery of that exhaustion requirement. There was no reason for the BIA to consider or comment upon the purported non-service of the Amended NTA as that assertion was never made to it.

*Miller* cannot support the majority opinion's use of it. It is one thing to expect the BIA to have knowledge of the statute it is tasked with interpreting and to be able to identify the statute that properly applies once the agency has been put on notice of the facts. It is a very different thing to require the BIA to discern for itself that there might be facts contained within the record, not identified to the BIA by the petitioner, that might support a claim that proper notice had not been given at some other point in time.

The argument relied upon by the majority opinion was not exhausted. That should require us to deny the petition.

## II. Prejudice

The majority concludes, at 27, that the record provides no evidence of proper service of the amended NTA "as required by due process." Even if Diaz Martinez had properly exhausted a claim based on failure to serve the Amended NTA, that claim would fail because she did not assert, let alone prove, that she was prejudiced, an essential

element of a due process claim. In practical terms, the Amended NTA made no difference in this case.

To prevail on a claimed due process violation, a petitioner must show prejudice. *See Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011) ("An alien bears the burden of proving the alleged violation prejudiced his or her interests."); *United States v. Jimenez-Borja*, 378 F.3d 853, 859 (9th Cir. 2004) (upholding a deportation order where the IJ failed to advise the petitioner of his possible eligibility for a waiver of deportation because petitioner would not have been able to make the showing required for the waiver, and thus "was not prejudiced by the failure to be advised of its existence."). Any failure to properly serve the Amended NTA on Diaz Martinez had no impact on the BIA decisions before us.

The original charges against Diaz Martinez included the allegations that she was a native and citizen of El Salvador and that she entered the United States "at or near San Ysidro, California, on or about August 25, 1989." The Amended NTA replaced those allegations with the allegation that she had "entered the United States at or near an unknown place on or about an unknown date."

The amendment to the allegations could not have had any impact on the IJ's finding that Diaz Martinez was removable. The order of removal entered by the IJ following her failure to appear for the October 27 hearing noted that at a prior hearing she had admitted the factual allegations in the NTA and conceded removability. If she had admitted the more specific allegations contained in the original NTA, she necessarily conceded the unspecific allegation in the Amended NTA. Diaz Martinez never made an argument to the BIA that she was not, in fact, removable. Nor has she made any such argument to us. She was not prejudiced by

that finding by the IJ that she was removable. We have held that "due process does not require inclusion of charges in the NTA that are not grounds for removal but are grounds for denial of relief from removal." *Salviejo-Fernandez v. Gonzales*, 455 F.3d 1063, 1066 (9th Cir. 2006). The majority opinion does not even try to explain how the finding of removability could have been affected.

Instead, the majority opinion states, at 32 n. 11, that Diaz Martinez was prejudiced because her application for discretionary relief was affected.

How? That is something the majority opinion does not explain.

It cannot, because the Amended NTA had no impact on the ability of Diaz Martinez to seek discretionary relief. Once she had been found removable, a finding she did not contest, she was permitted to seek discretionary relief. That was true whether the finding of removal was based on the original NTA or on the Amended NTA. She had the opportunity to proceed with that application at the October 27 hearing. The reason she did not pursue that application was that she failed to appear for the hearing. The Amended NTA did not cause that failure.

The majority opinion says, at 29 n. 8, that it does not reach the issue of whether she had been given proper notice of the October 27 hearing, but that is sophistry. The main argument presented to us by Diaz Martinez was that she had not been given proper notice of that hearing. If that argument had merit, the majority opinion would not take the tortured path it has adopted. In brief, I note that the IJ and the BIA had a legitimate basis for denying Diaz Martinez's first motion to reopen, based on the failure to support that motion with evidence despite having been given time to do that. The

BIA did not abuse its discretion in denying her later motion to reopen as both time and number barred. Even if the merits of the argument were reached, the record reflects that her attorney was personally served with the notice of the October 27 hearing, as the majority opinion notes, at 8. That was sufficient under the law to satisfy the service requirement.

More to the point, for current purposes, the Amended NTA had nothing to do with any of this and, in particular, nothing to do with her failure to obtain discretionary relief. The "prejudice" hypothesized by the majority opinion is fantasy.

Perhaps understanding that the case for actual prejudice is dubious, the majority opinion also appears to suggest, at 32, that no showing of prejudice was required because Diaz Martinez was ordered removed "on an ineffective NTA." The majority opinion then quotes, in a footnote, at 32 n.11, from *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), to support an implicit conclusion that Diaz Martinez should not be required to show any actual prejudice to obtain relief. That is simply not the law, however. As it did with the exhaustion requirement, the majority opinion skirts around the prejudice requirement by misapplying a precedent.

The *Raya-Vaca* appeal involved a challenge to a criminal conviction under 8 U.S.C. § 1326 for unlawful reentry following a previous order of removal. *Id*. at 1200. A defendant charged with that offense may collaterally attack his previous removal order because that order was a predicate element to the criminal charge. *Id*. at 1201.

Raya-Vaca attacked the order in his case, which resulted from an expedited removal proceeding, on the ground that it

was fundamentally unfair because it did not comply with the requirements of due process. *Id*. at 1202. Expedited removal proceedings did not by statute afford him an opportunity for administrative or judicial review. *Id*. An immigration officer was expected to conduct an inspection and determine whether the alien was inadmissible and subject to expedited removal. *Id*. at 1199–1200. The immigration officer was required by regulation to advise the alien of the charges and to give the alien an opportunity to respond to the sworn statement that detailed those charges. *Id*. at 1200. Even if the alien was subject to expedited removal, he could obtain statutory relief in the form of being permitted to withdraw his application for admission and to depart voluntarily, without a removal order and without formal immigration consequences. *Id*. Raya-Vaca argued that he was never advised of the charges against him or presented an opportunity to review the sworn statement prepared by the immigration officer to support his removal. *Id*. at 1203.

Our court agreed with the argument, noting that due process always requires "notice and an opportunity to respond" and that the "failure to inform Raya-Vaca of the charge against him and to provide him the opportunity to review the sworn statement [of the immigration officer] constituted a violation of Raya-Vaca's due process rights." *Id*. at 1204. It was in that context that we made the observation quoted in the majority opinion, at 32 n.11, that there is a type of regulation "that protect[s] fundamental due process rights," distinct from the "'violation of a relatively minor procedural rule.'" *Id*. at 1205 (quoting *Montes-Lopez v. Holder*, 694 F.3d 1085, 1093 (9th Cir. 2012)).

But the majority opinion disregards the rest of the *Raya-Vaca* opinion, which went on to discuss how the defendant in that case did, in fact, demonstrate prejudice. *Id*. at 1206–

11. We observed that a showing of prejudice might not be required to "show the due process violation itself," *id*. at 1205, but that did not end the inquiry. To obtain relief, Raya-Vaca still had to show that he had been prejudiced by the due process violation. "To succeed in demonstrating that the 2011 expedited removal order was fundamentally unfair, Raya-Vaca must also establish that he suffered prejudice as a result of the entry of the order. To do so, Raya-Vaca must show that he had 'plausible grounds for relief' from the removal order." *Id*. at 1206 (citation omitted). We concluded that he satisfied that requirement because there were grounds that might have justified relief from the expedited removal order, if he had understood the charges and been given an opportunity to respond to them. Thus, "Raya-Vaca has shown that he had some evidentiary basis for relief from his 2011 removal order." *Id*. at 1210. It was on that basis that his conviction was reversed.

The majority opinion does not discuss that part of *Raya-Vaca*. Diaz Martinez is required to demonstrate prejudice to obtain relief, but she has not suggested any actual prejudice she suffered due to a failure to serve the Amended NTA on her. She has not contended that was the reason that she failed to appear at the October 27 hearing that resulted in the order of removal in absentia. She had notice of that hearing and, if she had appeared, the hearing would have provided her with an opportunity to present her position. Without a showing of prejudice, our precedent does not permit us to grant her relief based on purported due process violations that had no practical impact whatsoever.

Moreover, as should be clear, the facts in our case do not in the slightest resemble the facts in *Raya-Vaca*. The removal order in that case resulted from expedited removal proceedings in which it appears the alien did not know what

was happening. The problem there was not simply a paperwork glitch. "Even if express notice of the charge of inadmissibility were not necessary, we do not see how he could have known the specific charge against him without being told of it, and Raya-Vaca averred he was unaware that he was facing a formal removal order based on his lack of documentation." *Id*. at 1206. Diaz Martinez did not make any similar claim, and she could not, as she was already well aware that she was charged with having entered this country without inspection or any lawful authority and had already conceded removability. The Amended NTA did not alter the charged basis for her removal at all.

Simply put, Diaz Martinez suffered no prejudice from the failure to serve her with the Amended NTA. Treating her claim that she was not properly served with the Amended NTA as a "violation of fundamental due process rights" that relieves her from demonstrating prejudice is not supported by our precedent and guts the well-established requirement that relief based on a violation of due process requires a showing of prejudice.

## III.    Conclusion

I agree that this court has subject matter jurisdiction over Diaz Martinez's motions to reopen, but I disagree that she preserved the argument that she lacked notice of the amended charges against her, and I further disagree that she has demonstrated prejudice from the failure to serve her with the amended charges. I therefore respectfully dissent. The petition for review should be denied.